IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: § § § **PERMICO MIDSTREAM PARTNERS** § **HOLDINGS, LLC,** *et al.*, § § **Debtors** § § ─────────────────────── § § **EDGEN MURRAY CORPORATION,** § § **Plaintiff,** § § v. § § **PERMICO MIDSTREAM PARTNERS,** § **LLC and HGC MIDSTREAM INV LLC,** § § **Defendants.** § | | **Chapter 11** Case No. 20-32437 (MI) (Jointly Administered) Adversary No. 20-03173 |

**EDGEN MURRAY CORPORATION'S FIRST AMENDED COMPLAINT**

Edgen Murray Corporation ("Edgen") files this First Amended Complaint against HGC Midstream INV LLC ("HGC").

## PARTIES

1. Plaintiff Edgen is a global supplier of specialized products for worldwide energy and infrastructure markets. Edgen is incorporated under the laws of the State of Nevada with its principal place of business located in Baton Rouge, Louisiana.

2. Defendant HGC is a Delaware limited liability company and has appeared in this adversary proceeding.

## JURISDICTION

3. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 541, 544 and 550, and by order of the United

States District Court for the Southern District of Texas referring to this Court all cases and proceedings in this District arising in or related to a case under Title 11 of the United States Code.

4. This is a core proceeding arising under 28 U.S.C. §§ 157(b)(2)(A), (K), and (O).

## FACTUAL BACKGROUND

### *The Project*

5. Permico Midstream Partners, LLC's ("Permico") pipeline project was to be a significant multi-billion-dollar investment in the Texas oil and gas industry. The project included the planned installation of two pipelines from the Permian Basin and Eagle Ford shale regions to Corpus Christi, including the construction of two fractionation trains, an underground salt dome storage facility, and an export terminal(s) with connection to the natural gas liquids storage and trading hub in Mont Belvieu, Texas (the "Project").

### *Permico/HGC Agreements*

6. Permico and HGC entered into a Development Loan Agreement (the "Development Loan Agreement") on April 30, 2019. At the same time, Permico and HGC entered into a Security Agreement (the "Security Agreement") as well as other supporting documents.

7. HGC agreed to provide the bulk of the funding ($79.7 million) pursuant to the Development Budget (as defined in the Development Loan Agreement) for the Project, which was to provide funding for the Development Phase to enable Permico Midstream Partners Holdings, LLC ("Holdings") to achieve "Project Debt Financing" and "Project Equity Financing." The development financing provided by HGC was intended to fund Permico's development of the project parameters. According to the Development Loan Agreement, when Permico achieved Project Equity Financing, HGC's loans were to be repaid and Permico would have the funds needed to build the project." As the secured lender under the Development Loan Agreement, HGC loaned Permico $30 million (the "Secured Loan") and an additional capital contribution of

2

approximately $6.1 million of a $22.5 million capital call made by Permico after weeks of protracted and contentious negotiations between HGC and Permico. HGC failed to contribute the additional $39 million in development funds commitment pursuant to the Development Budget, which prevented Permico from achieving financial close on Project Debt Financing and Project Equity Financing (hereinafter "Financial Close").

### *Agreements Related to the Edgen Pipe*

8. In late spring 2019, Edgen and Permico were in the final stages of negotiating the sale of a significant quantity of line pipe for the Project (the "Pipe"). The Secured Loan and other funds to be provided by HGC under the Development Loan Agreement were insufficient to – and never intended to – cover Permico's purchase of the Pipe. During the negotiations, Permico advised Edgen that it was developing the Project and working to obtain the necessary financing for the acquisition of the Pipe from Edgen, among other things. Edgen understood that Permico anticipated achieving Financial Close on or about July 29, 2019. In hopes that that Permico would secure the necessary funds to pay for the Pipe, and to meet Permico's anticipated construction schedule for the Project, Edgen agreed that manufacturing of the Pipe would "begin no later than July 29, 2019 and [would] proceed on a continuous basis thereafter." To secure the order for Pipe, but protect its rights in the event Permico was unable to secure the needed funding, Edgen insisted upon and obtained Permico's agreement that Edgen would retain title to the Pipe and extend all delivery obligations until it provided written notice that it was satisfied that Permico had financing or the funds available to pay for the Pipe. To effectuate this condition precedent, each of the Permico POs contained the following paragraph placed on the face of the document:

> The price set forth above is the total amount due to Seller for the Goods and Services described herein, except as expressly set forth herein or in the Purchase Order Terms and Conditions. Notwithstanding any other provision of the Purchase Order and related documents (including the Purchase Order Terms and Conditions) to the contrary, Buyer and Seller agree that title to the Goods shall remain in Seller and all delivery obligations of Seller shall be extended until such time as Seller, in its reasonable discretion, provides written notice to Buyer that Seller is satisfied that Buyer has the financing or other funding sources available to pay for the Goods; provided, however, Seller agrees that it shall immediately after execution of this Purchase Order enter into binding agreements to secure mill-space for the production of the Goods hereunder and Seller further agrees that the manufacture (i.e. pipe rolling) of the Goods hereunder shall begin no later than July 29, 2019 and shall proceed on a continuous basis thereafter.

9. On May 14, 2019, Edgen and Permico entered Purchase Orders Nos. 18101.1002.0003, 18102.1002.0004, and 18106.1002.0003 (the "Permico POs") pursuant to which Edgen agreed to supply, and Permico agreed to purchase, approximately 200 miles of line pipe for the Project.

10. By July 2019, American Cast Iron Pipe Company ("American") (Edgen's pipe supplier) was well into production of the Pipe. At that same time, Permico advised Edgen that it was continuing to seek financial backing to meet its obligations to Edgen (and other parties). As of that time, it appeared that Permico would not achieve Financial Close on schedule. Because American did not have the space needed for storage of the Pipe, Edgen, Permico, Oso Development Partners, LLC[1] ("Oso"), and Swan Pipeline Services, LLC[2] ("Swan") commenced discussions concerning the handling and storage of the Pipe.

11. Upon information and belief, a protracted dispute arose between HGC and Permico in May 2019, after the original investment team for HGC was replaced. As a result, HGC ultimately refused to contribute all of the additional funds committed to Permico. Without the additional funding, Permico and the Project were at risk of failing to reach Financial Close. In late August and early September 2019, Jeffrey Beicker (Permico's CEO) ("Beicker") advised HGC

---

[1] Oso was Permico's "Buyer's Representative."
[2] Swan owns and operates certain pipe laydown yards in Texas and New Mexico (the "Swan Yards").

4

that its failure to provide the funding required by the Development Loan Agreement caused a delay in the Financial Close, which source of funding was intended to pay for the Pipe.[3] *See* Declaration of Jeffrey Beicker, Exhibit 1 (incorporated by reference herein). At this same time, Beicker also advised HGC that Permico would not be able to accept, nor would it accept, delivery of the Pipe because of the delays in Financial Close caused by HGC's failures to provide funding. *Id*. Beicker also told Edgen that Permico would have no objection if Edgen were to sell the Pipe to another buyer. *Id.*

12. As the Pipe was nearing the time for shipment in late August 2019, Edgen, Permico Oso, and Swan had numerous discussions on how to manage the transportation, handling, and storage of the completed Pipe considering Permico's financial situation and delays in project development that were exacerbated by HGC's refusal to provide development funding. Upon information and belief, HGC's refusal to provide the development funding imperiled Permico's ability to reach Financial Close. And without reaching Financial Close, Permico could not – and never did – provide Edgen with proof that it could pay for the Pipe.

13. Ultimately, Edgen, Permico, Oso, and Swan decided that due to American's inability to store the Pipe at its facility, and having available storage space at the Swan Yards that were strategically located in relation to the Project site, that it would be best to have the Pipe sent to Swan with the understanding that Swan would receive the Pipe and refuse to release the Pipe to Permico, Oso, or any third party without the authorization and approval from Edgen.

14. As a result, prior to the Pipe being shipped or delivered to the Swan Yards, Swan agreed that it would not release the Pipe to Permico, Oso, or any third party without receiving authorization and approval from Edgen. *See* Declaration of Chris Holland, Exhibit 2 (incorporated

---

[3] A more complete factual description of HGC's actions and conduct are set forth in Permico Energy, LLC's Emergency Motion to Dismiss Bankruptcy, filed May 8, 2020. *See* Case No. 20-32437 [Dkt. 22].

by reference herein); Declaration of Jason Holland, Exhibit 3 (incorporated by reference herein). The parties also contemplated drafting a letter memorializing that "no pipe shall be released to Oso/Permico until authorization from Edgen." *See* Email from J. Johnson to J. Holland, dated August 21, 2019, Exhibit 4. Ultimately, no written agreement was prepared until later because all parties understood that Swan would not release the Pipe to *any* party without Edgen's consent and approval and still believed that Permico was either going to resolve its dispute with HGC to achieve Financial Close or find alternate financing. Permico, Edgen, and Swan acted consistent with that understanding at all times. This bailment arrangement was, therefore, at first a bailment implied in law and in fact in place around late August 2019 and early September 2019, **before the Pipe was shipped to Swan**, and later formalized into a written agreement and purchase order between Edgen and Swan on or about February 18-19, 2020, but effective as of September 9, 2019.

15. By November 2019, a significant amount of Pipe had been received by Swan at the Swan Yards. However, Permico had been unable to resolve its financing issues with HGC, find a replacement for HGC, or achieve Financial Close. As a result, the parties again entered into discussions and exchanged drafts of proposed written agreements to address issues caused in whole, or in part, by HGC's failure to provide the development funding to achieve Financial Close. At this same time, Edgen continued to evaluate the possibility of selling the Pipe to other parties. By the end of 2019, almost all of the Pipe had been received by Swan. Except for a minor payment by Permico to Swan in September 2019, Edgen paid Swan for all of the offloading, trucking, racking, and storage of the Pipe and continued to make payments to Swan for storage of the Pipe until it was sold in late 2021 and through the first half of 2022. Edgen has also paid State of Texas property taxes on the Pipe and paid to insure the Pipe at all times.

16. Edgen never provided Permico notice that it was satisfied that Permico had the financing or other funding to pay for the Pipe. Although the Pipe was shipped to and received by Swan, Edgen did not issue any invoices to Permico and received no payments for the Pipe from Permico because Edgen never authorized Swan to release the Pipe to Permico.

### *HGC's Notice of Lien*

17. On January 27, 2020, HGC sent a Notice of Lien to Edgen claiming that it held a lien and a priority perfected security interest in the Pipe. HGC sent the notice despite its knowledge that Permico could not and would not accept delivery of the Pipe as of late August and early September 2019 when it withheld funding from Permico. Edgen was also unaware that HGC had apparently attempted to coerce Permico into falsely declaring that the Pipe had indeed been delivered to Permico, and then even offered to compensate Mr. Beicker for his assistance in liquidating Edgen's Pipe.[4] Thus, HGC's Notice of Lien (and the allegations therein) ignored the express condition precedent on the face of the Permico POs, concealed its knowledge that Permico had advised it could not and would accept delivery of the Pipe ***before the Pipe was shipped to Swan***, and failed to disclose that fact to Edgen.

18. On February 7, 2020, Edgen responded to HGC, pointing to the condition precedent on the face of the Permico POs and rejecting HGC's Notice of Lien. In response, on February 11, 2020, HGC claimed that "title to the Pipe passed to Permico ***when they were delivered to Permico***," and then threatened Edgen with litigation if it failed to acquiesce to HGC's assertion of lien rights by February 18, 2020. Because HGC was Permico's creditor, Edgen forwarded HGC's February 11, 2020 demand letter to Permico the same day. For the reasons stated herein, among

---

[4] *See* Permico Energia, LLC's Emergency Motion to Dismiss Bankruptcy Cases Pursuant to 11 U.S.C. § 1112(b), at ¶40. [Case No. 20-32437; Dkt. 22] ("Energia's Motion to Dismiss"), attached as Exhibit 5 at ¶ 40. The allegations and supporting documentation made by Permico Energia against HGC and its representatives in Energia's Motion to Dismiss are incorporated herein by reference.

others, Edgen disagrees with HGC that (1) title to the Pipe have passed to Permico, and (2) the Pipe was delivered to Permico.

19. In response to HGC's February 11, 2020 demand to Edgen, Permico's counsel advised HGC by email on February 12, 2020 (and later forwarded to Edgen's counsel), that HGC held no security interest in the Pipe and that the Pipe had not been delivered to Permico consistent with what Beicker told HGC in late August and early September 2019. Permico's counsel, further to Edgen's position that no delivery had occurred, also advised HGC that there had been no delivery of the Pipe because Permico had not "verified and approved" the Pipe pursuant to Exhibit B to the Permico POs, which provides:

> **EXHIBIT B**
>
> **PAYMENT SCHEDULE**
>
> Seller will invoice Buyer for quantities of Goods upon DDP arrival of such Goods at the designated delivery point set forth in the cover of the Purchase Order. All delivered quantities must be verified and approved by Buyer or Buyer's agent and shall meet all other requirements of Delivery (as defined in Exhibit A).
>
> Upon Delivery, subject to the terms and conditions of Exhibit A, Seller's invoice shall be paid by Buyer Net 30 days. Notwithstanding the foregoing, Seller agrees that it shall not be entitled to receive any payment from Buyer on any date prior to August 10th, 2019, regardless of any invoice submission by Seller on any prior date.

Under this provision, Permico has a contractual right to verify and approve that the proper quantities have been received. Permico never verified and approved the quantities of Pipe.

20. Exhibit B also imposes a delivery obligation on Edgen to invoice Permico for the Pipe. With delivery extended under the Permico POs until Edgen delivers written notice that it is satisfied that Permico has the necessary financing of funding to pay for the Pipe, Edgen never invoiced Permico for the Pipe. The condition precedent in the Permico POs expressly extends Edgen's delivery obligations (e.g., invoicing, risk of loss, transfer of title, etc.) until Edgen provides written notice that it is satisfied that Permico has the financing or funding to pay for the Pipe. Under the plain language and express terms of the Permico POs, ownership, title, risk of loss, and physical control of the Pipe remains with Edgen until written notice is provided.

21. Edgen physically delivered the Pipe to the Swan Yards. It is undisputed that Swan received the Pipe and that Swan, not Permico, had physical possession of the Pipe and was holding the Pipe for Edgen until it was sold in late 2021 and the first half of 2022 at the direction of Edgen. At all times, Edgen maintained its ownership and control over the Pipe.

### *HGC Forces Permico into Chapter 11 Bankruptcy*

22. Edgen believed, and continues to believe, that substantial economic interests, both public and for the parties involved, were better served by the completion of the Project. Indeed, in 2019, Permico represented the original projected production was 4.3MMbbls total in the Permian and Eagle Ford combined by 2025. This was understated. In fact, the *actual production* for 2022 from the Permian Basin alone is estimated 5.02MMbbls. Up until the date this Chapter 11 case was filed, and thereafter, Permico and its counsel assured Edgen that the Project was viable and that Permico would resolve the issues with HGC and obtain sufficient funding to pay for the Pipe in full. However, HGC's aggressive posture undermined Edgen's confidence (and most assuredly others) in Permico's ability to successfully obtain financing. To Edgen, HGC seemed determined to scuttle the Project and scheme to assert alleged rights as a secured creditor of Permico against the Pipe.

### CAUSES OF ACTION

**COUNT 1: Declaratory Judgment**

23. Edgen incorporates the allegations set forth in paragraphs 1 – 22 above.

24. A real, substantial, and justiciable controversy exists between the parties concerning their respective rights and obligations arising out of the Permico POs. Specifically, the parties dispute whether, as HGC contends, that a security interest attached to the Pipe because the Pipe has been allegedly delivered to Permico; or whether, as Edgen, Permico, and Swan agree that

Swan had possession of the Pipe as Edgen's bailee and never released it to Permico, therefore the Pipe was not delivered to Permico preventing HGC from obtaining a security interest in the Pipe.

25. Pursuant to 28 U.S.C. §§157, 2201, and 2202, the Court should determine and declare that:

    a. Swan was Edgen's bailee as it related to the Pipe;

    b. Edgen's Pipe was shipped and delivered to its bailee Swan;

    c. Edgen's Pipe was not tendered for delivery because Edgen did not give direction to deliver the Pipe to Permico pursuant to TEX. BUS. & COM. CODE §2.503(d);

    d. Ownership, title, risk of loss, control, and all other rights and obligations arising out of ownership of the Pipe remained with Edgen at all times to the exclusion of any third party;

    e. Swan held the Pipe on behalf of Edgen as its bailee and was not to release the Pipe to Permico or any third Party without the consent and approval of Edgen;

    f. HGC's security interest did not attach to the Pipe because Permico had no rights in the Pipe to convey a security interest in the Pipe to HGC; and,

    g. HGC is estopped from claiming a security interest in the Pipe because it knew that Permico refused delivery of the Pipe prior to the Pipe being sent to the Swan Yards.

**COUNT 2: Declaratory Judgment – Stoppage of Delivery (Alternative Claim)**

26. Edgen incorporates the allegations set forth in paragraphs 1 – 22 above.

27. Edgen elected to exercise its right to a stoppage of delivery under TEX. BUS. & COM. CODE § 2.705. Specifically, in late August and early September, before the Pipe was shipped or delivered to Swan, Edgen, Swan, and Oso on behalf of Permico, agreed that Swan would receive the Pipe from Edgen and would not release it to Permico, Oso, or any other third party without Edgen's consent. The parties acted consistent with this understanding at all relevant times. This agreement and understanding was formalized in written agreements between Edgen and Swan that

were effective as of September 9, 2019. Accordingly, Swan had a legal status as Edgen's bailee with respect to the Pipe because Swan has agreed and understood at all relevant times that it was not to release the Pipe to Permico, Oso, or any third party without the express authorization and consent of Edgen. Because Swan was notified to prevent delivery of the Pipe to Permico, Edgen exercised its right to stoppage of delivery of the Pipe to Permico under TEX. BUS. & COM. CODE § 2.705.

28. Upon information and belief, and in contrast with Edgen, Swan, Permico, and Oso's agreement and understanding, HGC contends that Swan was Permico's agent.

29. A real, substantial, and justiciable controversy exists between Edgen and HGC concerning Edgen's ownership of the Pipe and Swan's legal status as Edgen's bailee. Pursuant to 28 U.S.C. §§157, 2201, and 2202, the Court, in the alternative to Count 1, should determine and declare that:

    a. Prior to shipment or delivery of the Pipe to Swan, Edgen, Swan, Permico, and Oso understood and agreed that Swan would not release the Pipe to Permico, Oso, or any third party without the authorization and approval of Edgen;

    b. Swan was Edgen's bailee as it relates to the Pipe;

    c. Edgen has stopped delivery of the Pipe pursuant to TEX. BUS. & COM. CODE § 2.705;

    d. Edgen's stoppage of delivery rights with respect to the Pipe have priority over HGC's alleged security interest in the Pipe;

    e. Delivery under the Permico POs has not occurred;

    f. Ownership, title, risk of loss, control, and all other rights and obligations arising out of ownership of the Pipe remain with Edgen to the exclusion of any third party; and

    g. HGC does not have a security interest in the Pipe.

## NON-ELECTION OF REMEDIES AND ALTERNATIVE PLEADING

30. Edgen incorporates the allegations, claims, and causes of action set forth in paragraphs 1 – 29 above.

31. Edgen pleads all foregoing causes of action and facts alternatively and they are not intended to be, and should not be construed as, an election of remedies or claims for relief.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Edgen Murray Corporation respectfully requests that upon hearing and proper proof the Court:

a. issue declarations consistent with paragraphs 25(a)-(g) and/or 29(a)-(g) above;

b. order that all funds held in escrow pursuant to the Pipe Sale Order be immediately released to Edgen; and,

c. enter an award in favor of Edgen for all attorney's fees and costs incurred in Adversary No. 20-03173, and for such other and further relief, both special and general, at law or in equity, that it may show itself justly entitled to receive.

Respectfully submitted,

By /s/ *Graig J. Alvarez*
  Graig J. Alvarez
  Attorney-in-Charge
  Graig.Alvarez@asb-lawfirm.com
  State Bar No. 24001647
  1301 McKinney St., Suite 1550
  Houston, Texas 77010
  Telephone: 713-351-0300
  Telecopier: 713-351-0320

**Attorney-in-Charge for Edgen Murray Corporation**

OF COUNSEL:

ALVAREZ STAUFFER BREMER PLLC
   Lance R. Bremer
   State Bar No. 24006892
Lance.Bremer@asb-lawfirm.com
1301 McKinney St., Suite 1550
Houston, Texas 77002
Telephone: 713-351-0300
Telecopier: 713-351-0320

*and*

LOWENSTEIN SANDLER LLP
   Jeffrey D. Prol
   jprol@lowenstein.com
   Bruce S. Nathan
   bnathan@lowenstein.com
1251 Avenue of the Americas, 17th Floor
New York, New York 10020

## CERTIFICATE OF SERVICE

I hereby certify that all attorneys of record are being served this 3rd day of October, 2022, with a true and correct copy of this document via the Court's CM/ECF system or email.

                                                    */s/ Graig J. Alvarez*
                                                        Graig J. Alvarez