# EXHIBIT 1

**EXECUTION VERSION**

---

**SECURITY AGREEMENT**

**by**

**PERMICO MIDSTREAM PARTNERS LLC**
**as Grantor,**

**in favor of**

**HGC MIDSTREAM INV LLC**
**as Secured Party**

**Dated as of**

**April 30, 2019**

---

# SECURITY AGREEMENT

## TABLE OF CONTENTS

SECTION I. DEFINITIONS ...................................................................................1

    1.1    Definitions.................................................................................1

SECTION II. GRANT OF SECURITY INTEREST...........................................4

    2.1    Collateral.................................................................................4

    2.2    Sufficiency of Collateral Description ...................................5

    2.3    Obligations..............................................................................6

    2.4    Instruments.............................................................................6

    2.5    Use of Collateral ...................................................................6

    2.6    Rights and Obligations..........................................................6

    2.7    Termination............................................................................7

    2.8    Perfection...............................................................................8

    2.9    Further Assurances................................................................8

SECTION III. REPRESENTATIONS AND WARRANTIES............................9

    3.1    Representations Incorporated by Reference ........................9

    3.2    Name; Jurisdiction of Organization; Chief Executive Office.................9

    3.3    Title; No Other Liens ............................................................9

    3.4    Other Perfection Matters ....................................................10

    3.5    Inventory and Equipment....................................................10

    3.6    Assigned Agreements ..........................................................10

    3.7    Intellectual Property............................................................10

SECTION IV. COVENANTS AND AGREEMENTS........................................11

    4.1    Notice of Adverse Claims and Changes in the Collateral...................11

i

4.2    Legal Status.................................................................................................11

4.3    Prohibition Against Transfer of Collateral ..................................................11

4.4    Fees and Expenses ......................................................................................11

4.5    Filing Fees, Taxes, etc. ...............................................................................12

4.6    Maintenance of Collateral and Records; Inspection ...................................12

4.7    Limitation on Liens on the Collateral .........................................................12

4.8    Indemnification ...........................................................................................12

4.9    Location of Collateral .................................................................................12

4.10   Performance of Assigned Agreements..........................................................13

SECTION V. GRANTOR'S OBLIGATIONS .......................................................13

5.1    Payments .....................................................................................................13

5.2    Accounts .....................................................................................................13

SECTION VI. REMEDIES; RIGHTS UPON EVENT OF DEFAULT...................13

SECTION VII. APPLICATION OF PROCEEDS ...................................................15

SECTION VIII. ASSIGNMENT OF PROJECT PERMITS ...................................16

SECTION IX. SECURITY INTEREST ABSOLUTE ............................................16

SECTION X. SECURED PARTY APPOINTED ATTORNEY-IN-FACT ..............17

10.1   Appointment as Attorney-in-Fact ...............................................................17

10.2   Performance in Lieu of Grantor ..................................................................18

10.3   Duty of the Secured Party ...........................................................................18

10.4   Absence of Fiduciary Relation....................................................................18

SECTION XI. MISCELLANEOUS .......................................................................18

11.1   Survival of Representations and Warranties................................................18

11.2   No Waiver; Cumulative Remedies ..............................................................19

11.3   Severability .................................................................................................19

11.4    Exculpatory Provisions; Reliance By Secured Party ............................................19

11.5    Amendment ........................................................................................................20

11.6    Successors and Assigns.......................................................................................20

11.7    Number and Gender ...........................................................................................20

11.8    Headings .............................................................................................................20

11.9    Waivers by Grantor............................................................................................20

11.10   Notices ...............................................................................................................22

11.11   Counterparts; Facsimile Delivery ......................................................................22

11.12   Continuing Security Interest; Termination ........................................................22

11.13   Payments Set Aside............................................................................................23

11.14   Conflicts, Etc......................................................................................................23

11.15   Non-Recourse Nature of Obligations.................................................................23

11.16   Governing Law ...................................................................................................23


Schedule 1      Organization and Chief Executive Office of Grantor
Schedule 2      Location of Equipment and Inventory
Schedule 3      Intellectual Property
Schedule 4      Addresses for Notices
Schedule 5      Excluded Assets

iii

## SECURITY AGREEMENT

This SECURITY AGREEMENT (this "Security Agreement"), dated as of April 30, 2019, is made by Permico Midstream Partners LLC, a Texas limited liability company (together with its successors and assigns, "Grantor") in favor of HGC Midstream INV LLC, a Delaware limited liability company, (together with its successors and assigns, "Lender" or "Secured Party") under the Loan Agreement (as defined below).  Grantor and Secured Party are sometimes referred to herein each individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, Grantor is engaged, directly or indirectly through its wholly owned subsidiaries, in the development of a Y-Grade transportation and fractionation system connecting the Permian Basin to Corpus Christi and purity product end markets, including gathering pipelines, Y-Grade long-haul pipelines, fractionators, an ethane purity product pipeline, Y-Grade and purity product storage, and an LPG export terminal (the "Project");

WHEREAS, Grantor and Lender are parties to that certain Development Loan Agreement, dated as of the date hereof (the "Loan Agreement"), and the Loan Documents referred to therein (the "Loan Documents"), pursuant to which Lender has committed to provide a development loan (the "Loan") for the benefit of Grantor in connection with the development of the Project; and

WHEREAS, the execution and delivery of this Security Agreement is a condition precedent to the effectiveness of the Loan Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in order to induce Lender to make the Loan, the parties hereto hereby agree as follows:

## SECTION I.

## DEFINITIONS

1.1     Definitions.  Unless otherwise defined herein, all terms used herein, including such terms used in the preamble and recitals hereto that are defined in the Loan Agreement shall have their respective meanings as therein defined.  The rules of interpretation set forth in the Loan Agreement shall govern this Security Agreement.  In addition to the terms defined in the Loan Agreement, the preamble and the recitals, the following terms used herein shall have the respective meanings set forth below:

"Accounts" has the meaning assigned to the term "accounts" in the UCC.

"Additional Contract" shall mean an Assigned Agreement executed after the date hereof.

"Assigned Agreements" shall mean all contracts and agreements (whether written or oral) to which Grantor is or may hereafter become a party or a third party beneficiary (and any and all accounts, general intangibles, instruments, and contract rights arising thereunder or related thereto), including but not limited to (1) all Project Contracts, (2) all Project Permits, (3) any and all right, title and interest Grantor may have in any financing arrangements relating to the financing or the purchase of all or any portion of the Collateral by future purchasers, (4) all plans, specifications, and drawings prepared for the Project, (5) any and all contracts, letters of intent, easements, licenses, rights of way or other agreements granting Grantor any option to purchase, or any right to lease or use, real property, or granting to Grantor any other right to or interest in real property, (6) all other contracts to which Grantor is a party or beneficiary that in any way relate to the use, enjoyment, development, construction, operation, maintenance or ownership of the Collateral (such contracts, as amended, supplemented or otherwise modified, and whether now or hereafter existing and executed, but subject to the last paragraph of Section 2.1), including (A) all rights of Grantor, now or hereafter existing, to receive moneys thereunder, whether or not earned by performance or for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of pursuant to the Assigned Agreements, (B) all rights of Grantor, now or hereafter existing, to receive proceeds of any performance or payment, bond, insurance, indemnity, warranty or guaranty with respect to the Assigned Agreements, (C) all claims of Grantor, now or hereafter existing, for damages arising out of or for breach of or default under the Assigned Agreements, (D) all supporting obligations in favor of Grantor and incurred pursuant to the Assigned Agreements, and (E) all rights of Grantor, now or hereafter existing, to take any action to terminate, amend, supplement, modify or waive performance of the Assigned Agreements, to perform thereunder and to compel performance and otherwise exercise all remedies thereunder; provided, however, that unless an Event of Default shall have occurred and be continuing, Grantor may exercise all rights, interests and benefits under the Assigned Agreements in any lawful manner not prohibited by this Security Agreement, the Loan Agreement or any of the other Loan Documents.

"Chattel Paper" has the meaning assigned to the term "chattel paper" in the UCC.

"Collateral" has the meaning set forth in Section 2.1 of this Security Agreement, but excluding in all events the Excluded Assets.

"Commercial Tort Claim" has the meaning assigned to the term "commercial tort claim" in the UCC.

"Control" has, with respect to Deposit Accounts, Investment Property, Electronic Chattel Paper and Letter-of-Credit Rights, the respective meaning assigned to the term "control" in the UCC.

"Deposit Accounts" has the meaning assigned to the term "deposit accounts" in the UCC.

"Documents" has the meaning assigned to the term "documents" in the UCC.

"Electronic Chattel Paper" has the meaning assigned to the term "electronic chattel paper" in the UCC.

"Equipment" has the meaning assigned to the term "equipment" in the UCC.

2

"Excluded Assets" means each of the assets described on Schedule 5 attached hereto.

"Fixtures" has the meaning assigned to the term "fixtures" in the UCC.

"General Intangibles" has the meaning assigned to the term "general intangibles" in the UCC.

"Goods" has the meaning assigned to the term "goods" in the UCC.

"Grantor" has the meaning set forth in the preamble to this Security Agreement.

"Indemnified Liabilities" has the meaning set forth in Section 4.8 of this Security Agreement.

"Instruments" has the meaning assigned to the term "instruments" in the UCC.

"Inventory" has the meaning assigned to the term "inventory" in the UCC.

"Investment Property" has the meaning assigned to the term "investment property" in the Uniform Commercial Code.

"Lender" has the meaning set forth in the preamble to this Security Agreement.

"Letter-of-Credit Rights" has the meaning assigned to the term "letter-of-credit rights" in the UCC.

"Loan" has the meaning set forth in the recitals to this Security Agreement.

"Loan Agreement" has the meaning set forth in the recitals to this Security Agreement.

"Loan Documents" has the meaning set forth in the recitals to this Security Agreement.

"Obligations" has the meaning set forth in Section 2.3 of this Security Agreement.

"Party" has the meaning set forth in the preamble to this Security Agreement.

"Proceeds" has the meaning assigned to the term "proceeds" in the UCC.

"Project" has the meaning set forth in the recitals to this Security Agreement.

"Secured Party" has the meaning set forth in the preamble to this Security Agreement.

"Securities Accounts" has the meaning assigned to the term "securities accounts" in the UCC.

"Securities Intermediary" has the meaning assigned to the term "securities intermediary" in the UCC.

1737376.07-NYCSR03A - MSW

"Security Agreement" has the meaning set forth in the preamble to this Security Agreement.

"Security Entitlement" has the meaning assigned to the term "security entitlement" in the UCC.

"Supporting Obligations" has the meaning assigned to the term "supporting obligations" in the UCC.

"Uniform Commercial Code" or "UCC" means the Uniform Commercial Code as in effect in the State of Texas from time to time; provided, however, that, in the event that, by reason of mandatory provisions of law the perfection or priority of the Secured Party's security interest in any Collateral is governed by the Uniform Commercial Code of a jurisdiction other than the State of Texas, "UCC" shall mean the Uniform Commercial Code as in effect in such other jurisdiction for purposes of the provisions hereof relating to such perfection or priority.

## SECTION II.

## GRANT OF SECURITY INTEREST

2.1    Collateral.  As security for the prompt and complete payment and performance when due (whether at stated maturity, by acceleration or otherwise) of any and all of the Obligations (as defined below) now existing or hereafter arising, and howsoever evidenced, Grantor hereby collaterally assigns, conveys, mortgages, pledges, hypothecates and transfers to Secured Party, and creates and grants to Secured Party, a Lien on and first priority security interest in, all of its right, title and interest in, to and under, the following, whether now existing or hereafter arising or acquired (collectively, the "Collateral"), but excluding the Excluded Assets:

  (a)      all Accounts;

  (b)      all Deposit Accounts;

  (c)      all Instruments;

  (d)      all Documents;

  (e)      all Chattel Paper, including all Electronic Chattel Paper;

  (f)      all Inventory;

  (g)      all Equipment;

  (h)      all Fixtures;

  (i)      all Goods not covered by the preceding clauses of this Section 2.1;

  (j)      all Intellectual Property;

4

(k)     all Letter-of-Credit Rights;

(l)     all Investment Property (including all Securities Accounts);

(m)     all Commercial Tort Claims;

(n)     all General Intangibles not covered by the preceding clauses of this Section 2.1;

(o)     all other tangible and intangible property of Grantor not otherwise described above;

(p)     all Assigned Agreements;

(q)     to the extent assignable, any present or future right, title or interest of Grantor under any insurance, indemnity, warranty or guaranty in respect of the business and operations of Grantor and any rents, revenues, incomes, profits, proceeds of insurance or other rights to compensation in respect of the business and operations of Grantor;

(r)     all other personal property and fixtures of Grantor, or in which Grantor may have an interest, and wheresoever located, whether or not of a type which may be subject to a security interest under the UCC, and any replacements, renewals, or substitutions for any of the foregoing or additional tangible or intangible personal property hereafter acquired by Grantor; and

(s)     to the extent not otherwise included, all Proceeds, Supporting Obligations, products and accessions of and to any and all of the foregoing Collateral, including whatever is received upon any collection, exchange, sale or other disposition, or distribution on account of any of the Collateral, any property into which any of the Collateral is converted, or any rights arising out of the Collateral, whether cash or non-cash proceeds, and any and all other amounts paid or payable or in connection with any of the Collateral.

Notwithstanding anything in this Agreement to the contrary, in no event shall the Collateral include, and Grantor shall not be deemed to have granted a security interest in any of Grantor's rights or interests in any property in which the Grantor now or hereafter has rights, to the extent in each case, (i) a security interest may not be granted by Grantor in such property under the effective terms of the governing document applicable thereto, without the consent of one or more parties thereto other than Grantor or any Affiliate thereof, but only for so long as such consent has not been obtained or (ii) a grant of a security interest is prohibited by a Governmental Authority or applicable Law, or requires a consent not obtained of any Governmental Authority.  Additionally, for the avoidance of doubt, the Collateral shall not include any personal property owned by Jeffrey Beicker.

2.2     Sufficiency of Collateral Description.  It is the intention of the parties hereto that the description of the Collateral set forth in Section 2.1 be sufficient to enable Secured Party, upon exercise of its remedies set forth in this Security Agreement to take possession of, and foreclose upon, all of the right, title and interest of Grantor in and to the Project and any and all real property and personal property of Grantor, tangible and intangible, used or usable in

5

connection therewith, and to enable Secured Party or its designee to operate, sell, lease, license or otherwise dispose of the entire interest of Grantor in and to the Project or any part thereof, in each case, upon the occurrence and during the continuance of an Event of Default; provided, however, that all of the Collateral is hereby assigned to Secured Party solely as security, and Secured Party shall have no duty, liability or obligation whatsoever with respect to any of the Collateral (or any agreement giving rise thereto or any transaction in connection therewith).

2.3    Obligations.  This Security Agreement secures, in accordance with the provisions hereof, the following obligations, now existing or hereafter arising (collectively, the "Obligations"):

(a)    payment and performance of each and every liability, obligation, indebtedness, covenant and agreement of Grantor, now or hereafter existing, contained in the Loan Agreement or any other Loan Document, in each case whether for principal, interest, premium, fees, expenses or otherwise pursuant thereto, and any amendments or supplements thereto, extensions or renewals thereof or replacements therefor, including, without limitation, the Obligations, as such term is defined in the Loan Agreement;

(b)    payment of all sums advanced in accordance herewith by or on behalf of Secured Party, to protect, retake, hold, or prepare for sale, lease, license or other disposition of, or realize upon, any of the Collateral purported to be covered hereby or thereby, including those fees and expenses described in Section 4.4 hereof, with interest thereon at the Base Rate from the date of demand therefor; and

(c)    payment of all sums, with interest thereon at the Base Rate from the date of demand therefor, that become due and payable to or for the benefit of Secured Party pursuant to the terms of this Security Agreement or any other Loan Document;

in each case, whether direct or indirect, joint or several, absolute or contingent, liquidated or unliquidated, now or hereafter existing, renewed or restructured, reinstated, created or incurred, and, including all indebtedness of Grantor under any instrument now or hereafter evidencing or securing any of the foregoing.

2.4    Instruments.  Subject to the applicable provisions of the Loan Agreement, so long as no Event of Default has occurred and is continuing, Grantor may retain for collection in the ordinary course of business any Instruments obtained by it in the ordinary course of business, and Secured Party shall, promptly upon the request, and at the expense of Grantor, make appropriate arrangements for making any Instruments pledged by Grantor available to Grantor for purposes of presentation, collection or renewal.  Any such arrangement shall be effected, to the extent deemed appropriate by Secured Party, against a trust receipt or like document.

2.5    Use of Collateral.  So long as no Event of Default has occurred and is continuing, Grantor shall be entitled to use and possess the Collateral in any lawful manner not in breach of the Loan Agreement, this Security Agreement or any other Loan Document, and subject to the rights, remedies, powers and privileges of Secured Party hereunder.

2.6    Rights and Obligations.

6

(a)      No reference in this Security Agreement to proceeds or to the sale or other disposition of the Collateral shall authorize Grantor to sell or otherwise dispose of any Collateral except to the extent otherwise expressly permitted by the terms of the Loan Agreement and the other Loan Documents.  Secured Party shall not be required to take steps necessary to preserve any rights against prior parties to any part of the Collateral.

(b)      Notwithstanding anything to the contrary herein, Grantor shall remain liable to perform its duties and obligations under each of the Assigned Agreements and any other agreements included in the Collateral in accordance with their respective terms to the same extent as if this Security Agreement had not been executed and delivered.  The exercise by Secured Party of any right, remedy, power or privilege in respect of this Security Agreement shall not release Grantor from any of their duties and obligations under any Assigned Agreement and any other agreements unless expressly assumed by Secured Party in writing.  Secured Party shall not have any duty, obligation or liability under any Assigned Agreement or other agreement or in respect of any Project Permit included in the Collateral by reason of this Security Agreement or any other Loan Document unless expressly assumed by Secured Party in writing, nor shall Secured Party be obligated to perform any of the duties or obligations of Grantor under any Assigned Agreement or other agreement or any such Project Permit or to take any action to collect or enforce any claim (for payment) under any Assigned Agreement, other agreement or Project Permit unless expressly assumed by Secured Party in writing.

(c)      No lien granted by this Security Agreement in Grantor's right, title and interest in any Assigned Agreement, other agreement or Project Permit shall be deemed to be a consent by Secured Party to any such Assigned Agreement, other agreement or Project Permit.

2.7      Termination.  This Security Agreement shall create continuing security interests in the Collateral and shall remain in full force and effect for the benefit of Secured Party until all Obligations to be paid or performed under the Loan Documents have been indefeasibly paid and performed in full.  Upon the happening of all of such events, the security interests granted hereby shall terminate and Secured Party shall forthwith cause to be assigned, transferred and delivered, against receipt but without any recourse, warranty or representation whatsoever, other than as to the release of Secured Party's Lien thereon and the absence of any continuing Lien arising by, through or under Secured Party, any remaining Collateral and moneys received in respect of the Collateral, to or on the order of Grantor.  The Secured Party, upon payment of its fees and expenses (including reasonable attorney's fees and expenses), shall execute and deliver to Grantor, at Grantor's expense, such documentation as Grantor shall reasonably request to evidence such termination or expiration and release the liens created under this Security Agreement, including termination statement(s) for any financing statement on file with respect to the Collateral.  The security interest created hereby shall be released with respect to any portion of the Collateral that is sold, transferred or otherwise disposed of in compliance with the terms and conditions of any of the Loan Documents.  Notwithstanding the foregoing, this Security Agreement shall continue to be effective or be reinstated and relate back to such time as though this Security Agreement had always been in effect, as the case may be, if at any time any amount received by Secured Party or Secured Party in respect of the Obligations is rescinded or must otherwise be restored or returned by Secured Party or Secured Party upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Grantor or upon the appointment of any

7

intervenor or conservator of, or trustee or similar official for, Grantor or any substantial part of its properties, or otherwise, all as though such payments had not been made.

2.8    Perfection.

(a)    Grantor authorizes Secured Party to execute and cause the filing of such financing statements, continuation statements and other documents in such offices as are or shall be necessary or as Secured Party may determine to be appropriate to create, perfect and establish the priority of the liens granted by this Security Agreement in any and all of the Collateral, to preserve the validity, perfection or priority of the liens granted by this Security Agreement in any and all of the Collateral, or to enable Secured Party to exercise its remedies, rights, powers and privileges under this Security Agreement (including authorization to describe the Collateral as "all personal property", "all assets" or words of similar meaning, in each case "whether now owned or hereafter acquired"). Concurrently with the execution and delivery of this Security Agreement, Grantor shall (i) deliver to Secured Party any and all Instruments, endorsed or accompanied by such instruments of assignment and transfer in such form and substance as Secured Party may reasonably request, (ii) cooperate with Secured Party in obtaining, and take such other actions as are necessary or that Secured Party may request in order for it to obtain Control with respect to all Deposit Accounts, Investment Property, Electronic Chattel Paper and Letter-of-Credit Rights included in the Collateral, including (to the extent requested by Secured Party) (A) in the case of any Deposit Account, causing the relevant bank at which such Deposit Account is maintained to enter into an agreement in such form as Secured Party may accept and (B) in the case of any Security Entitlement, causing the relevant Securities Intermediary to enter into an agreement in such form as Secured Party may accept, (iii) with respect to any Commercial Tort Claim that Grantor may hereafter hold, Grantor shall promptly notify Secured Party in a writing signed by Grantor of the brief details thereof and grant to Secured Party, a perfected security interest therein and the proceeds thereof, all upon the terms of this Security Agreement, with such writing to be in form and substance satisfactory to Secured Party, and (iv) take all such other actions and authenticate or sign and file or record such other records or instruments, as are necessary or as Secured Party may request to perfect and establish the priority of the liens granted by this Security Agreement in any and all of the Collateral or to enable Secured Party to exercise its remedies, rights, powers and privileges under this Security Agreement.

(b)    Grantor acknowledges that it is not authorized to file any amendment or termination statement with respect to any financing statement relating to any security interest granted hereunder without the prior written consent of Secured Party and agrees that it will not do so without the prior written consent of Secured Party, subject to Grantor's rights under Section 9-509(d)(2) of the UCC.

2.9    Further Assurances. To the extent not included in the foregoing, Grantor shall, from time to time, at Grantor's expense, promptly execute and deliver all further agreements, instruments and documents, and take all further action, that may be necessary or advisable, or that Secured Party reasonably determine may be necessary or advisable, in order to create, perfect, or protect any security interest granted or purported to be granted hereby, or to enable Secured Party, to exercise and enforce its rights and remedies hereunder with respect to the Collateral. Without limiting the generality of the foregoing, Grantor shall (a) execute and file

8

such financing and continuation statements, or amendments thereto, and such other instruments, endorsements and notices, as may be necessary, or as Secured Party may request, in order to perfect and preserve the security interest granted or purported to be granted hereby; (b) cause Secured Party, to be noted as the secured party on any certificate of title for a titled good if such notation is a condition to attachment, perfection or priority of, or ability of Secured Party, to enforce, the security interest in such Collateral; (c) comply with any provision of any statute, regulation or treaty of the United States as to any Collateral, if compliance with such provision is a condition to attachment, perfection or priority of, or ability of Secured Party to enforce, the security interest in such Collateral; (d) obtain governmental and other third party consents and approvals, including any consent of any licensor, lessor or other person, necessary or advisable, in Secured Party's commercially reasonable judgment, for enforceability of the security interest in the Collateral; (e) execute any agreement, or deliver any Collateral to Secured Party, in form and substance reasonably satisfactory to Secured Party, in order to provide Secured Party, with Control with respect to the relevant Collateral in order for Secured Party to obtain a perfected security interest in such Collateral; and (f) take all actions required by any other Laws in any relevant jurisdiction, or by other Law as applicable in any foreign jurisdiction.

## SECTION III.

## <u>REPRESENTATIONS AND WARRANTIES</u>

Grantor hereby represents and warrants as follows:

3.1     <u>Representations Incorporated by Reference</u>.   Grantor hereby makes each and every representation and warranty made by it in Article IV of the Loan Agreement to the same extent as if each such representation and warranty had been set forth in full herein, and each such representation and warranty is hereby incorporated by reference in this Section III.

3.2     <u>Name; Jurisdiction of Organization; Chief Executive Office</u>.

(a)     <u>Schedule 1</u> attached hereto correctly sets forth Grantor's full and correct legal name, type of organization, jurisdiction of organization, organizational identification number, if any, chief executive office and principal place of business and mailing address as of the date of this Security Agreement.

(b)     Grantor has not (i) changed its location (as defined in Section 9-307 of the Uniform Commercial Code); (ii) previously changed its name except as set forth on <u>Schedule 1</u> or (iii) previously become a "new debtor" (as defined in the Uniform Commercial Code) with respect to a currently effective security agreement entered into by another Person except as set forth on <u>Schedule 1</u>.

3.3     <u>Title; No Other Liens</u>.  Grantor is the sole owner of the Collateral in existence on the date hereof and will be the sole owner of the Collateral hereafter acquired, free and clear of any and all Liens or claims of others except for Permitted Liens, and Grantor has full power and authority to grant the security interest in and to the Collateral hereunder.  Except with respect to Secured Party, and the Permitted Liens, no security agreement, financing statement or other public notice with respect to all or any part of the Collateral is on file or of record in any public

9

office.  Further, no Lien or security interest on or in any shares, equity, membership or other ownership interests of Grantor has been registered in the ownership interest register maintained by Grantor in which all shares, equity, membership or other ownership interests of Grantor are recorded, except for Permitted Liens.  Grantor further represents that:  (a) none of the Collateral constitutes, or is the proceeds of, "farm products" as defined in the UCC, and (b) none of the account debtors or other persons obligated on any of the Collateral is a governmental authority subject to the Federal Assignment of Claims Act or like federal, state or local statute or rule in respect of such Collateral.

3.4    <u>Other Perfection Matters</u>.  Financing statements or other appropriate instruments have been filed pursuant to the UCC as may be necessary to perfect the security interest granted or purported to be granted hereby to the extent any such security interest may be perfected by the filing of a financing statement.  All other action necessary or requested by Secured Party to protect and perfect the security interest in each item of the Collateral has been duly taken, including the delivery of all originals of any Chattel Paper, Instruments and certificated securities, and all other Collateral with respect to which a security interest may be perfected by Secured Party's taking possession thereof and, subject to the requirements contained in the UCC with respect to the filing of continuation statements, this Security Agreement constitutes a valid, continuing and perfected security interest in the Collateral in favor of Secured Party, for the benefit of Secured Party, subject to no Liens (other than Permitted Liens), and is enforceable as such against creditors of, and purchasers from, Grantor, against any owner, lessee or mortgagee of the real property where any of the Collateral is located or to which any of the Collateral relates and against any purchaser of such real property and any present or future creditor obtaining a Lien on such real property.

3.5    <u>Inventory and Equipment</u>.   On the date hereof, Grantor's Inventory and Equipment (other than mobile goods and Inventory or Equipment in transit in the ordinary course of business) are kept at the location specified on <u>Schedule 2</u> attached hereto.

3.6    <u>Assigned Agreements</u>.

(a)    Grantor has furnished to Secured Party a true and complete copy of each of the Assigned Agreements in effect on the date hereof.  Each of the Assigned Agreements in effect on the date hereof has been duly authorized, executed and delivered by Grantor, and, to the knowledge of Grantor, each of the other parties thereto, and is in full force and effect, and is binding upon and enforceable against Grantor and, to the knowledge of Grantor, each of the other parties thereto, in accordance with its terms, except as enforcement thereof may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally or by limitation upon the availability of equitable remedies; and

(b)    None of the Assigned Agreements has been transferred or assigned by Grantor, or, to the knowledge of Grantor, any other party thereto, except to Secured Party for security purposes as expressly provided herein.

3.7    <u>Intellectual Property</u>.

10

(a)      Schedule 3 attached hereto sets forth all Intellectual Property that is either registered with a Governmental Authority, or is the subject of an application for registration, and is owned by Grantor on the date hereof and which is required to conduct its business, as such business is conducted as of the date of the making of this representation.

(b)      Except as set forth in Schedule 3, on the date hereof, none of the Intellectual Property owned by Grantor is the subject of any licensing or franchise agreement pursuant to which Grantor is the licensor or franchisor.

## SECTION IV.

## COVENANTS AND AGREEMENTS

Grantor hereby covenants and agrees that it shall faithfully observe and fulfill, and shall cause to be observed and fulfilled, each and all of the following covenants until all Obligations have been indefeasibly paid and performed in full:

4.1      Notice of Adverse Claims and Changes in the Collateral.  Grantor shall, after Grantor becomes aware or should have become aware of (a) any adverse claim against the Collateral involving an amount in excess of $50,000 per individual claim and $100,000 for the aggregate of all adverse claims, or (b) any material change in the Collateral, or of the occurrence of any event which could be expected to have a material adverse effect on the value of the Collateral or on the security interest therein, deliver promptly to Secured Party notice of each such claim, change or event.

4.2      Legal Status.  Grantor shall not change its name, place of business or chief executive office, or its mailing address or organizational identification number, or change its type or organization, jurisdiction of organization or other legal status, without providing at least fifteen (15) days prior written notice to Secured Party and shall take, at its expense, all action necessary or requested by Secured Party in order to continue the perfection and priority of the security interest in the Collateral after making any such change.  If Grantor does not have an organizational identification number and later obtains one, Grantor shall forthwith notify Secured Party of such organizational identification number.

4.3      Prohibition Against Transfer of Collateral.  Grantor shall not sell, transfer, lease or otherwise dispose of any of the Collateral, or attempt, offer or contract to do so, except as permitted by the Loan Agreement and any other Loan Document.

4.4      Fees and Expenses.  Expenses of the Parties shall be paid in accordance with Section 9.2 of the Loan Agreement; provided, that if there is an Event of Default, then Grantor shall, upon demand, pay to Secured Party the amount of any and all reasonable out-of-pocket costs and expenses (including the reasonable fees and expenses of its counsel, any special consultants engaged, and any local counsel who might be retained by Secured Party in connection with the transactions contemplated hereby), which Secured Party may incur in connection with (a) the sale, lease, license or other disposition of, collection from, or other realization upon, any of the Collateral pursuant to the exercise or enforcement of any of the rights of Secured Party, hereunder, (b) the exercise of its rights under this Security Agreement, or

11

(c) following the Effective Date, the performance of this Security Agreement, any agreement supplemental hereto and any instruments of further assurance.  Any amounts payable by Grantor pursuant to clause (a) or (b) of this <u>Section 4.4</u> shall be payable on demand and any amounts payable by Grantor pursuant to clause (c) of this <u>Section 4.4</u> shall be payable on the Maturity Date and all such amounts shall constitute Obligations.

4.5     <u>Filing Fees, Taxes, etc.</u>  Grantor shall pay all filing, registration and recording fees or re-filing, re-registration and re-recording fees, and all federal state, county and municipal stamp taxes and other similar taxes, duties, imposts, assessments and charges arising out of or in connection with (a) the Collateral or the use or operation of such Collateral, (b) the execution and delivery of this Security Agreement and any agreement supplemental hereto and (c) the execution and delivery of any instruments of further assurance.

4.6     <u>Maintenance of Collateral and Records; Inspection</u>.  At all times and at its own cost and expense, Grantor shall keep and maintain the Collateral in good order and repair and will not use the same in violation of any Law or any policy of insurance thereon, except as otherwise provided in the Loan Agreement.  Grantor shall keep and maintain, at all times and at its own cost and expense, complete records of the Collateral, which records shall be satisfactory to Secured Party.  Such records will be kept at Grantor's principal place of business set forth in <u>Schedule 1</u>.  Grantor shall furnish to Secured Party statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as Secured Party may reasonably request, all in reasonable detail.  Subject to <u>Section 6.2</u> of the Loan Agreement, Secured Party and Secured Party may inspect the Collateral.

4.7     <u>Limitation on Liens on the Collateral</u>.  Grantor shall defend the right, title and interest of Secured Party in and to any of the Collateral against the claims and demands of all Persons whomsoever.

4.8     <u>Indemnification</u>.  Grantor shall defend, indemnify and hold harmless Secured Party and each of their officers, directors and employees, from and against any and all costs, expenses, disbursements, liabilities, obligations, losses, damages, injunctions, judgments, suits, actions, causes of action, fines, penalties, claims and demands, of every kind or nature, including reasonable attorneys' fees and expenses (herein collectively called the "<u>Indemnified Liabilities</u>") that are occasioned by, result from or arise out of any of the terms, agreements, or covenants to be performed by Grantor or any other party thereto under this Security Agreement or any Assigned Agreement, other than Indemnified Liabilities finally determined by a court of competent jurisdiction as resulting from Secured Party's or a Secured Party's gross negligence or willful misconduct.  All indemnities set forth herein shall survive the execution and delivery of this Security Agreement, the termination of this Security Agreement and the making and repayment of the Obligations.

4.9     <u>Location of Collateral</u>.  All tangible Collateral, to the extent not delivered to, or under the control of, Secured Party in accordance with the terms of this Security Agreement, will be kept at the site of the Project, Grantor's chief executive office or the locations set forth in <u>Schedule 2</u>, and Grantor will not remove, or allow or consent to the removal of, such Collateral from such locations without providing at least thirty (30) days' prior written notice to Secured Party.

12

4.10    <u>Performance of Assigned Agreements</u>.  Grantor agrees to furnish to Secured Party as soon as reasonably practicable (and, with respect to any Additional Contract, in any event within fifteen (15) days after the execution thereof) a signed copy of each Additional Contract and a signed copy of each amendment, modification or supplement to any Assigned Agreement. Grantor shall deliver to Secured Party promptly upon receipt thereof a copy of any notices or other document issued or received by Grantor pursuant to or in connection with any Assigned Agreement.

**SECTION V.**

**<u>GRANTOR'S OBLIGATIONS</u>**

5.1    <u>Payments</u>.  During the continuance of an Event of Default, all payments received by Grantor under or in connection with any of the Collateral shall be held by Grantor in trust for Secured Party, shall be segregated from other funds of Grantor and shall, forthwith upon receipt by Grantor be turned over to Secured Party or its designee in the same form as received by Grantor (duly endorsed by Grantor to Secured Party, if requested).

5.2    <u>Accounts</u>.   Any and all such payments so received by Secured Party or its designee (whether from Grantor or otherwise) may, in the sole discretion of Secured Party or its designee, be deposited into such accounts as Secured Party shall determine, or upon and during the continuance of an Event of Default be applied, subject only to the relevant provisions of the Loan Agreement and this Security Agreement and as otherwise may be required by applicable Law, in whole or in part by Secured Party or its designee in the manner specified in Section VII, unless otherwise consented to by Secured Party.

**SECTION VI.**

**<u>REMEDIES; RIGHTS UPON EVENT OF DEFAULT</u>**

Upon the occurrence and during the continuance of an Event of Default, in addition to any rights Secured Party may have under the Loan Agreement or any other Loan Document, Secured Party may do any or all of the following:

(a)    Declare, without presentment, demand, protest or notice of any kind (except as specified in any Loan Document or as required under the UCC), all of which Grantor hereby expressly waives, the entire amount of the Obligations to be immediately due and payable, whereupon all of such Obligations declared due and payable shall be and become immediately due and payable;

(b)    In addition to and without limitation on any rights arising out of the Loan Agreement and the other Loan Documents, take the following enforcement action with respect to any deposit or securities account constituting part of the Collateral, without being required to give any notice to Grantor or any bank or securities intermediary (except as may be required by applicable Law):  (i) direct any bank, securities intermediary or Grantor to deliver the same to Secured Party at any place or places designated by Secured Party, it being understood that such obligations are of the essence under this Security Agreement and that, accordingly, upon

13

application to a court of equity having jurisdiction, Secured Party shall be entitled to a decree requiring specific performance by such bank or securities intermediary, or Grantor, of such obligations; (ii) withdraw any and all cash and liquidate any financial assets and other property not constituting cash in any deposit or securities account constituting part of the Collateral, and apply such cash and the liquidation proceeds of financial assets or other property, if any, then held in any deposit or securities account constituting part of the Collateral, to the benefit of Secured Party, in satisfaction of all or any part of the Obligations then due and payable in the manner specified in Section VII hereof; and (iii) sell, assign, or otherwise liquidate any deposit or securities account constituting part of the Collateral, or any part thereof, at a public or private disposition, for cash, upon credit or for future delivery, and at such price or prices as Secured Party may deem satisfactory, and take possession of the proceeds of any such sale or liquidation. Grantor hereby acknowledges that if an Event of Default has occurred and is continuing, Secured Party is entitled to apply amounts outstanding to the credit of the any deposit or securities account constituting part of the Collateral as contemplated in this <u>Section 6(b)</u>;

(c)     Make such payments and do such acts as Secured Party may reasonably deem necessary to protect, perfect or continue the perfection of the security interest in the Collateral, including (i) paying, purchasing, contesting or compromising any Lien that is, or purports to be, prior or superior to the security interest granted hereunder, (ii) filing any transfer statement necessary to entitle the transferee to the transfer of record of all rights of Grantor in the Collateral referenced in such transfer statement, and (iii) commencing, appearing or otherwise participating in or controlling any action or proceeding purporting to affect the security interest in or ownership of the Collateral;

(d)     Foreclose on the Collateral as herein provided or in any manner permitted by applicable Law and exercise any and all of the rights and remedies conferred upon Secured Party by the Assigned Agreements either concurrently or in such order as Secured Party may determine without affecting the rights or remedies to which Secured Party may be entitled under the Loan Agreement or any other Loan Document.  Grantor hereby waives, to the extent permitted by applicable Law, notice and judicial hearing in connection with Secured Party's taking possession or commencing any collection, recovery, receipt, appropriation, repossession, retention, set-off, sale, leasing, licensing, conveyance, assignment, transfer or other disposition of or realization upon any or all of the Collateral, including any and all prior notice and hearing for any prejudgment remedy or remedies and any such right that Grantor would otherwise have under the constitution or any statute or other law of the United States of America or of any state;

(e)     Require Grantor to, and Grantor hereby agrees that it shall, at its expense and upon request of Secured Party, forthwith assemble all or part of the Collateral as directed by Secured Party and make it available to Secured Party at the location designated by Secured Party;

(f)     Without notice, demand or legal process (to the extent permitted by applicable Law), enter upon any premises of Grantor and take possession of the Collateral, whereupon Secured Party may use or operate the Collateral (i) for the purpose of preserving the Collateral or its value or (ii) as permitted by an order of a court having competent jurisdiction;

14

(g)     Without notice, except as specified below, sell, lease, license or otherwise dispose of the Collateral, or any part thereof, in its then present condition or following any commercially reasonable preparation or processing.  Any such disposition of the Collateral may be made by one or more contracts, in one or more parcels, at public or private disposition at Secured Party's offices or elsewhere, at such time or times, for cash, on credit or for future delivery, and at such price or prices and upon such other terms that Secured Party believes are commercially reasonable.  Grantor agrees that, to the extent notice of any such disposition shall be required by applicable Law, at least ten (10) Business Days' notice to Grantor of the time and place of any public disposition, or of the amount of time after which any private disposition is to be made, shall constitute reasonable notification.  Secured Party may purchase Collateral at a public disposition or at a private disposition only if the Collateral is of a kind that is customarily sold on a recognized market or the subject of widely distributed standard price quotations.  Secured Party shall not be obligated to make any disposition of the Collateral regardless of notice of disposition having been given.  Secured Party may adjourn any public or private disposition from time to time by announcement at the time and place fixed therefor, and such disposition may, without further notice, be made at the time and place to which it was so adjourned.  Secured Party shall incur no liability as a result of the manner of disposition of the Collateral, or any part thereof, at any private disposition conducted in a commercially reasonable manner.  Grantor hereby waives, to the extent permitted by applicable Law, any claims against Secured Party arising by reason of the fact that the price at which the Collateral, or any part thereof, may have been disposed of at a private disposition was less than the price which might have been obtained at a public disposition or was less than the aggregate amount of the Obligations, even if Secured Party accepts the first offer received that Secured Party deems to be commercially reasonable under the circumstances and does not offer the Collateral to more than one offeree.  To the extent permitted by applicable Law, Grantor hereby specifically waives all rights of redemption, stay or appraisal that it has or may have under any Law now existing or hereafter enacted.  Grantor authorizes Secured Party, at any time and from time to time, to execute, in connection with a disposition of the Collateral pursuant to the provisions of this Security Agreement, any endorsements, assignments or other instruments of conveyance or transfer with respect to the Collateral;

(h)     In accordance with applicable Law, accept the Collateral in full or partial satisfaction of the Obligations; and

(i)     Exercise, in respect of the Collateral, in addition to other rights and remedies provided for herein or otherwise available to it, all the rights and remedies of a secured party after default under the UCC and any other relevant Law in any jurisdiction.

## SECTION VII.

## APPLICATION OF PROCEEDS

The net proceeds of any enforcement, foreclosure, collection, recovery, receipt, appropriation, or realization on or any sale, lease, license or other disposition of the Collateral shall be applied to cover both (a) the payment of any expenses incurred by Secured Party in connection with the administration of this Security Agreement, the custody, preservation or sale of or the collection or other realization from, any of the Collateral, the exercise or enforcement of

15

any of its rights hereunder or the failure by Grantor to perform or observe any of the provisions hereof, including, without limitation, all reasonable attorneys' fees and legal expenses incurred by Secured Party, and (b) the payment of all or any part of the Obligations in accordance with the provisions of the Loan Documents.  Any surplus remaining after payment in full of all of the Obligations shall be promptly paid over to Grantor or to whomever may be entitled to receive such surplus. For the avoidance of doubt, it is understood that the Grantor shall remain liable to the extent of any deficiency between the amount of proceeds of the Collateral and the aggregated amount of the Obligations in accordance with the Loan Documents.

**SECTION VIII.**

**ASSIGNMENT OF PROJECT PERMITS**

Grantor shall, upon the occurrence and during the continuance of an Event of Default, at the request of Secured Party, assign, transfer or otherwise furnish to Secured Party or to any transferee of the interest of Secured Party (to the extent so assignable or transferable), all of its rights and interest in, to and under all Project Permits, including all offsets, allowances and similar rights issued under or in connection with all Laws, that are required to permit the Project to be operated in accordance with all Laws.  To the extent that such Project Permits and other rights referred to in the immediately preceding sentence shall not be assignable or transferable, upon the request of Secured Party upon the occurrence and during the continuance of an Event of Default, and following collection, enforcement, foreclosure, sale, lease, license or other disposition by Secured Party on or with respect to the Project, Grantor agrees to use its best efforts to assist Secured Party in renewing or extending in the name of Secured Party (or any other Person operating the Project), or in otherwise obtaining the benefits of, all of such Project Permits and other rights.

**SECTION IX.**

**SECURITY INTEREST ABSOLUTE**

The parties hereto shall not challenge or question in any proceeding the validity or enforceability of this Security Agreement as a whole or any term or condition contained herein. All of the rights of Secured Party hereunder, and the security interest and all obligations of Grantor hereunder, shall be absolute and unconditional irrespective of:

(a) any lack of validity or enforceability of any of the Project Contracts or any of the Collateral or any other agreement or instrument relating thereto;

(b) any change in the time, manner or place of payment of, all or any of the Obligations, or in any term of, or any amendment or waiver of, or any consent to any departure from, any Project Contract or any of the Collateral, or any other agreement or instrument related thereto, except for any change, amendment, waiver, consent or departure effected in accordance with the applicable Loan Documents;

(c) any exchange or release of any Collateral, or the non-perfection of any part of the security interest, or any release, amendment or waiver of, consent to or departure

16

from, any guaranty, for all or any of the Obligations, except for any exchange, release, amendment, waiver, consent or departure effected in accordance with the applicable Loan Documents; or

(d)     to the full extent permitted by applicable Law, any other circumstance that might otherwise constitute a defense available to, or a discharge of, Grantor or any third party pledgor other than payment in full of the Obligations.

## SECTION X.

## SECURED PARTY APPOINTED ATTORNEY-IN-FACT

10.1     <u>Appointment as Attorney-in-Fact</u>.   Grantor hereby irrevocably constitutes and appoints Secured Party and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact, for the purpose of carrying out the provisions of this Security Agreement and taking any action and executing any documents or instruments that Secured Party may reasonably deem necessary or advisable to accomplish the purposes of this Security Agreement, to perfect, preserve the validity, perfection and priority of, and enforce any lien granted by this Security Agreement and to exercise its rights, remedies, powers and privileges under this Security Agreement.   This appointment as attorney-in-fact is irrevocable and coupled with an interest until this Security Agreement is terminated and the security interests created hereby are released.   Without limiting the generality of the foregoing, Secured Party shall be entitled under this <u>Section 10.1</u> to do any of the following:

(a)     ask, demand, collect, sue for, recover, receive and give receipt and discharge for amounts due and to become due under and in respect of all or any part of the Collateral;

(b)     receive, endorse and collect any Accounts, Chattel Paper, Instruments or General Intangibles;

(c)     file any claims or take any action or proceeding in any court of law or equity that Secured Party may reasonably deem necessary or advisable for the collection of all or any part of the Collateral, defend any suit, action or proceeding brought against Grantor with respect to any Collateral, and settle, compromise or adjust any such suit, action or proceeding;

(d)     execute, in connection with any sale or disposition of the Collateral permitted hereunder, any endorsements, assignments, bills of sale or other instruments of conveyance or transfer with respect to all or any part of the Collateral;

(e)     enforce the rights of Grantor under any provision of any Assigned Agreement to the extent permitted thereunder and under the terms of this Security Agreement;

(f)     pay or discharge taxes and liens levied or placed on the Collateral;

(g)     generally, sell, transfer, pledge and make any agreement with respect to or otherwise deal with any of the Collateral as fully and completely as though Secured Party were the absolute owner thereof for all purposes; and

17

(h)     do, at Secured Party's option and at Grantor's expense, at any time, from time to time, all acts and things as Secured Party deems necessary to protect, preserve, or realize upon the Collateral and Secured Party's security interests therein and to effect the intent of this Security Agreement, all as fully and effectively as Grantor might do.

Anything in this Section 10.1 to the contrary notwithstanding, Secured Party agrees that it shall not exercise any right under the power of attorney provided for in this Section 10.1 unless an Event of Default shall have occurred and be continuing.

10.2    Performance in Lieu of Grantor.  Upon the occurrence and during the continuance of an Event of Default, with prior notice to Grantor, Secured Party, without releasing Grantor from any obligation, covenant or condition hereof, itself may (but shall not be obligated to) make any payment or perform, or cause the performance of, any such obligation, covenant, condition or agreement or any other action in such manner and to such extent as Secured Party may reasonably deem necessary to protect, perfect or continue the perfection of the security interest granted under this Security Agreement.  Any costs or expenses incurred by Secured Party in connection with the foregoing shall be payable by Grantor to Secured Party on demand.

10.3    Duty of the Secured Party.  Neither Secured Party nor any of its respective officers, directors, employees, or agents shall be liable for failure to demand, collect, or realize upon any Collateral or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of Grantor or any other Person or to take any other action whatsoever with regard to any Collateral.  The powers conferred on Secured Party hereunder are solely to protect its first-priority security interest in the Collateral, and shall not impose any duty upon Secured Party to exercise any such powers.  Secured Party shall be accountable only for amounts that it actually receives as a result of the exercise of such powers, and neither Secured Party nor its officers, directors, employees, or agents shall be responsible to Grantor for any act or failure to act hereunder.

10.4    Absence of Fiduciary Relation.  Secured Party undertakes to perform or to observe only such of its agreements and obligations as are specifically set forth in this Security Agreement or any other Loan Document, and no implied agreements, covenants or obligations with respect to Grantor, any Affiliate of Grantor or any party to any of the Assigned Agreements shall be read into this Security Agreement against Secured Party.  Secured Party in its capacity as such is not a fiduciary of and shall not owe or be deemed to owe any fiduciary duty to Grantor, any Affiliate of Grantor or any party to any of the Assigned Agreements, except as otherwise specifically required by applicable Law.

### SECTION XI.

### MISCELLANEOUS

11.1    Survival of Representations and Warranties.  All agreements, representations and warranties made or incorporated by reference herein shall survive the execution and delivery of this Security Agreement and the other Loan Documents and shall terminate only upon the indefeasible payment in full in cash of the Obligations and expiration of the commitments under the Loan Agreement, and shall be deemed to be material and to have been relied upon by

18

Secured Party and Secured Party, regardless of any investigation made by or on behalf of Secured Party or Secured Party.

      11.2   <u>No Waiver; Cumulative Remedies</u>.  By exercising or failing to exercise any of its rights, options or elections hereunder (without expressly waiving the same in writing), Secured Party shall not be deemed to have waived any breach or default on the part of Grantor or to have released Grantor from any of its obligations secured hereby.  No failure on the part of Secured Party to exercise, and no delay in exercising (without also expressly waiving the same in writing) any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof, or the exercise of any other right, power or privilege.  The remedies provided herein are cumulative and not exclusive of any remedies provided by law. Secured Party shall have all of the rights and remedies granted under the Loan Agreement or any other Loan Document, and any available at law or in equity, and these same rights and remedies may be pursued separately, successively or concurrently against Grantor or any Collateral, at the sole discretion of Secured Party.  The application of the Collateral to satisfy the Obligations pursuant to the terms hereof shall not operate to release Grantor from its Obligations until payment in full of any deficiency has been made in cash.

      11.3   <u>Severability</u>.  In the event any one or more of the provisions contained in this Security Agreement or in any other Loan Document should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and therein shall not in any way be affected or impaired thereby.  Where provisions of any law or regulation resulting in such prohibition or unenforceability may be waived, they are hereby waived by Grantor and Secured Party to the full extent permitted by law so that this Security Agreement shall be deemed a valid, legal and binding agreement, enforceable in accordance with its terms, and the security interest created hereby shall constitute a continuing first lien on and first perfected security interest in, the Collateral, in each case enforceable in accordance with its terms.  In the event that such provisions cannot be waived, the parties hereto shall endeavor in good-faith negotiations to replace any invalid, illegal or unenforceable provisions with valid provisions, the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

      11.4   <u>Exculpatory Provisions; Reliance By Secured Party</u>.

          (a)   <u>Exculpatory Provisions</u>.  Secured Party, nor any of its officers, directors, employees, agents, attorneys-in-fact or affiliates, shall be liable to Grantor or any other Person for any action taken or omitted to be taken by them under or in connection with this Security Agreement or any other Project Contract (except as otherwise provided herein or therein), or otherwise responsible in any manner to any Person for any recitals, statements, representations or warranties made by Grantor or any officer thereof contained in this Security Agreement or any other Project Contract or in any certificate, report, statement or other document referred to or provided for in, or received by Secured Party under or in connection with, this Security Agreement or any other Project Contract or for the value, validity, effectiveness, genuineness, enforceability or sufficiency of this Security Agreement or any other Project Contract or for any failure of Grantor to perform any of the Obligations.  Secured Party shall not be under any obligation to any Person to ascertain or to inquire as to the observance or performance of any of

19

the agreements contained in, or conditions of, this Security Agreement or any other Project Contract, or to inspect the properties or records of Grantor.  Notwithstanding anything to the contrary contained herein, neither Secured Party, nor any of its officers, directors, employees, agents, attorneys-in-fact or affiliates shall be exonerated from their gross negligence or willful misconduct as finally determined by a court of competent jurisdiction.

(b)  Reliance by Secured Party.  Secured Party shall be fully protected in relying upon any note, writing, resolution, notice, consent, certificate, affidavit, letter, electronic mail, telegram, telecopy, telex, teletype or facsimile message, statement, order, instrument, opinion, report, request, direction, bond, debenture or other document or conversation believed by it in good faith to be genuine and correct and to have been signed, sent or made by the proper Person or Persons and upon advice and statements of independent accountants and other experts selected by it and, with respect to all legal matters pertaining to this Security Agreement and its duties hereunder, upon advice of counsel selected by it.  Except as expressly provided herein, Secured Party shall have no obligation to any Person to act or refrain from acting or exercising any of its rights under this Security Agreement.

11.5   Amendment.  No modification or waiver of any of the provisions of this Security Agreement shall be binding on Secured Party or Grantor, except as expressly set forth in a writing duly signed and delivered by Secured Party and Grantor.

11.6   Successors and Assigns.  This Security Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. Neither Grantor nor Secured Party may assign or transfer any of its  rights or interest in or under this Security Agreement or delegate any of its obligations under this Security Agreement without the prior written consent of the other Party, which consent may not be unreasonably withheld or delayed, subject to any restrictions on Lender's right to assign as set forth in Section 9.1(a) of the Loan Agreement; provided that Secured Party may assign or transfer, without the consent of Grantor, its  rights or interest in or under this Security Agreement to (i) upon the occurrence and continuation of an Event of Default, (ii) simultaneously with Lender's permitted assignment of its rights and interests under the Loan Agreement (including the assignment of the Loan) subject to any restrictions on Lender's right to assign as set forth in Section 9.1(a) of the Loan Agreement, or (iii) to a Lender Affiliate, but subject to each of the conditions and requirements set forth in Section 9.1(a) of the Loan Agreement with respect to assignments to a Lender Affiliate.

11.7   Number and Gender.  Whenever used in this Security Agreement, the singular number shall include the plural and the plural the singular, and the use of any gender shall be applicable to all genders.

11.8   Headings.   Section headings and the Table of Contents used herein are for convenience of reference only, are not part of this Security Agreement and are not to affect the construction of, or to be taken into consideration in interpreting, this Security Agreement.

11.9   Waivers by Grantor.  Except as otherwise provided in this Security Agreement, Grantor waives, to the extent permitted by Law: (a) presentment, demand, protest and notice of presentment, notice of intent to accelerate the maturity of the Obligations and notice of such

20

acceleration, protest, default, non-payment, maturity, release, compromise, settlement, extension or renewal and hereby ratifies and confirms whatever Lender may do in this regard; and (b) the benefit of all stay, extension, marshaling-of-assets or similar laws, whether now or at any time hereafter in force, which may delay, prevent or otherwise affect the performance of the Obligations by Grantor or the enforcement of the Obligations by Secured Party or Secured Party. Grantor acknowledges that it has been advised by counsel with respect to this Security Agreement and the transactions evidenced by this Security Agreement.

(a)     Waiver of Trial by Jury.  THE PARTIES HERETO HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS SECURITY AGREEMENT, ANY OF THE LOAN DOCUMENTS, OR ANY DEALINGS AMONG THEM RELATING TO THE SUBJECT MATTER OF THIS LOAN TRANSACTION AND LENDER/GRANTOR RELATIONSHIP THAT IS BEING ESTABLISHED.  THE PARTIES HERETO ALSO WAIVE ANY BOND OR SURETY OR SECURITY UPON SUCH BOND THAT MIGHT, BUT FOR THIS WAIVER, BE REQUIRED OF ANY PARTY HERETO.  THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.  THE PARTIES HERETO EACH ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS ALREADY RELIED ON THE WAIVER IN ENTERING INTO THIS SECURITY AGREEMENT AND THAT EACH WILL CONTINUE TO RELY ON THE WAIVER IN THEIR RELATED FUTURE DEALINGS. THE PARTIES HERETO FURTHER WARRANT AND REPRESENT THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.  THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS SECURITY AGREEMENT, THE LOAN DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE LOAN.  IN THE EVENT OF LITIGATION, THIS SECURITY AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(b)     Waiver of Certain Damages.  GRANTOR SHALL NOT, REGARDLESS OF CAUSE, ASSERT ANY CLAIM WHATSOEVER AGAINST ANY OTHER PARTY FOR LOSS OF ANTICIPATORY PROFITS OR CONSEQUENTIAL, PUNITIVE, SPECIAL OR INDIRECT DAMAGES.

(c)     Consent to Jurisdiction.  Section 9.7 of the Loan Agreement is hereby incorporated by reference as if fully set forth in this Security Agreement, and Grantor confirms its consent and submission to jurisdiction and venue.

(d)     No Exclusive Jurisdiction.  Nothing contained in this Section 11.9 shall preclude Secured Party from bringing any legal suit, action or proceeding against Grantor in the

21

courts of any jurisdiction where Grantor or any of its property or assets may be found or located. To the extent permitted by the Laws of any such jurisdiction, Grantor hereby irrevocably submits to the jurisdiction of any such court and expressly waives, in respect of any such suit, action or proceeding, the jurisdiction of any court or courts which now or hereafter, by reason of its present or future domiciles, or otherwise, may be available to it.

(e)     Consent to Venue.   Grantor hereby irrevocably waives any objection which it may now or hereafter have to the laying of venue of any of the aforesaid actions or proceedings arising out of or in connection with any Loan Document or the transactions contemplated thereby, or relating hereto or thereto brought in the courts referred to in clause (c) above and hereby further irrevocably waives and agrees not to plead or claim in any such court that any such action or proceeding brought in any such court has been brought in an inconvenient forum.

11.10   Notices.   Without modifying any of the provisions of this Security Agreement concerning the requirements for, or waiver of, any notice, all notices or other communications required or permitted to be given pursuant to this Security Agreement shall be in writing and shall be considered properly given if mailed by first class United States mail, postage prepaid, registered or certified with return receipt requested, facsimile, or by delivering the same in person to the intended addressee.   Notice so mailed shall be effective two (2) days after it is deposited in a receptacle maintained by the United States Postal Office for the acceptance of mail.   Notice given in any other manner shall be effective only if and when received by the addressee, which receipt shall be deemed to have occurred upon the date of actual delivery as shown by the addressee's registry, or by carrier or other certification of receipt.   For purposes of notice, the addresses of the Parties shall be as set forth on Schedule 4 to this Security Agreement; provided, however, that any Party shall have the right to change its address for notice hereunder to any other location within the continental United States by the giving of ten (10) days' advance notice to the other Parties in the manner set forth hereinabove.

11.11   Counterparts; Facsimile Delivery.   This Security Agreement may be executed in two or more counterparts, each of which shall constitute an original but all of which when taken together shall constitute but one and the same agreement.   Delivery of an executed counterpart of a signature page of this Security Agreement by facsimile shall be as effective as delivery of a manually executed counterpart of this Security Agreement.

11.12   Continuing Security Interest; Termination.   This Security Agreement shall create a continuing security interest in the Collateral and shall remain in full force and effect for the benefit of Secured Party until all Obligations to be paid or performed by Grantor under the Loan Documents have been indefeasibly paid and performed in full and the Loan Agreement, and all commitments of Secured Party thereunder, have been terminated.   Upon the happening of all of such events, the security interest granted hereby shall terminate.   Upon such termination, Secured Party shall, within thirty (30) days after its receipt of a request from Grantor and at the expense of Grantor, execute and deliver to Grantor such documents as Grantor shall reasonably request to evidence such termination or expiration, including termination statement(s) for any financing statement on file with respect to the Collateral.

22

11.13   <u>Payments Set Aside</u>.  To the extent that Grantor or any other Person on behalf of Grantor makes a payment or payments of the Obligations to Secured Party, or Secured Party enforces its security interests or exercises its right of set-off, and such payment or payments or the proceeds of such enforcement or set-off or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, state or federal law, common law or equitable cause, then to the extent of such recovery, the Obligations or any part thereof originally intended to be satisfied, and this Security Agreement and all security interests, rights and remedies therefor, shall be revived and continued in full force and effect as if such payment had not been made or such enforcement or set-off had not occurred.

11.14   <u>Conflicts, Etc.</u>  To the extent that any provision of this Security Agreement shall be determined to conflict with any provision of the Loan Agreement, such provision of the Loan Agreement shall govern.

11.15   <u>Non-Recourse Nature of Obligations</u>.  Notwithstanding anything to the contrary contained in this Agreement or any other Loan Document, recourse for the satisfaction of the Obligations shall be limited to enforcement of the security interests, liens and encumbrances against Grantor's assets granted to Secured Party and the equity interests of Grantor pledged to Secured Party pursuant to the Security Agreement, and no other recourse for the satisfaction of the Obligations shall be had, whether by levy or execution or otherwise, against any of Grantor's members, stockholders, managers, directors, officers, agents or employees under any Law or Loan Document, or by the enforcement of any assessment or penalty, or otherwise, nor shall any of such Persons be personally liable for any amounts or claims, or liable for any defenses or any judgment based thereon or with respect thereto, other than payment from Grantor's assets and the equity interests in Grantor as a result of realization on the Collateral pursuant to security interests, liens and encumbrances granted to Secured Party pursuant to the Security Agreement.

11.16   <u>Governing Law</u>.  This Security Agreement shall be interpreted, and the rights and liabilities of the Parties hereto determined in accordance with, the laws of the State of Texas, without giving effect to conflicts of law provisions.

**[Signature Page Follows.]**

23

IN WITNESS WHEREOF, the parties hereto have caused this Security Agreement to be duly executed as of the day and year first written above.

GRANTOR:

PERMICO MIDSTREAM PARTNERS LLC

By: Permico Midstream Partners Holdings, LLC, its sole Member

By: Permico Energia LLC, its Manager

By: _____
Name: Jeffrey Beicker
Title: Manager

SECURED PARTY:

HGC MIDSTREAM INV LLC

By: _____

Name:  Haeyoung Lee
Title:    Manager

*[Signature Page to Security Agreement]*

**Schedule 1**

**Organization and Chief Executive Office of Grantor**

<u>Grantor's Legal Name, Type and Jurisdiction of Organization, and Organizational Identification Number:</u>

Permico Midstream Partners LLC, a Texas limited liability company

ID:  82-3197902

<u>Grantor's Chief Executive Office and Mailing Address:</u>

Permico Midstream Partners LLC
9301 Southwest Freeway, Suite 308
Houston, TX 77074

**Schedule 2**

**Location of Equipment and Inventory**

None

**Schedule 3**

**Intellectual Property**

None

**Schedule 4**

**Addresses for Notices**

Grantor:

Permico Midstream Partners LLC
9301 Southwest Freeway, Suite 308
Houston, TX 77074
Attention: Jeffrey Beicker
E-mail: jbeicker@permicoenergia.com

Secured Party:

HGC Midstream INV LLC
300 Frank W. Burr Blvd., Suite 52
Teaneck, New Jersey 07666
Attention: Steve Kim
Telephone: 201-347-3000 (ext.763)
Facsimile: 201-347-3001
E-mail: s.kim@hanwha-usa.com

with copy to:

Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue NW
Washington D.C. 20005
Attention: Lance Brasher
Telephone: 202-371-7402
Facsimile: 202-661-8259
E-mail: lance.brasher@skadden.com

**Schedule 5**

**Excluded Assets**

None