# EXHIBIT 5

*Execution Version*

**PURCHASE ORDER NO. 18106.1002.0003**
(This purchase order number must be shown on all packages, invoices, shipping papers, and correspondence)

| Seller: | Invoice to: | |
| --- | --- | --- |
| Edgen Murray Corporation 10370 Richmond Ave., Suite 900 Houston, TX 77042 | | Permico Midstream Partners, LLC 9301 SW Freeway, Suite 308 Houston, Texas 77074 |

| Buyer's Representative: Jason Holland, Oso Development Partners, LLC (432) 813 8805 Jason.holland@osopartners.com | Buyer's Purchasing Agent: Jason Holland | Project: Permico Midstream Partners, LLC Companero Pipeline |
| --- | --- | --- |

**Description (add schedule if further space required)**

| Date of Order | Delivery Terms | Delivered Via | Delivered to Buyer at |
| --- | --- | --- | --- |
| May 14, 2019 | DDP Swan Transportation Yard – Big Lake, Texas | Unit Train / Best Available – Per Quote | DDP Swan Transportation Yard – Big Lake, Texas |

| Item | Quantity | Goods | Delivery Date | Unit Price | Amount |
| --- | --- | --- | --- | --- | --- |
| 1 | 215,359.1 6 LF | 24" API Standard 5L Line Pipe, Grade X65 PSL2 ERW, .375WT, Quad Random Length, 14 – 16 mils FBE American Steel Pipe, Birmingham, Alabama | First delivery no earlier than July 10, 2019. Final delivery as per agreed upon schedule per Exhibit C. | $77.55/LF | $16,701,102.9 0 USD Sales Tax TBD Pending Project Exemption Status |
| | | | | Subtotal: | $16,701,102.90 |
| | | | | Price: | $16,701,102.90 |

The price set forth above is the total amount due to Seller for the Goods and Services described herein, except as expressly set forth herein or in the Purchase Order Terms and Conditions. Notwithstanding any other provision of the Purchase Order and related documents (including the Purchase Order Terms and Conditions) to the contrary, Buyer and Seller agree that title to the Goods shall remain in Seller and all delivery obligations of Seller shall be extended until such time as Seller, in its reasonable discretion, provides written notice to Buyer that Seller is satisfied that Buyer has the financing or other funding sources available to pay for the Goods; provided, however, Seller agrees that it shall immediately after execution of this Purchase Order enter into binding agreements to secure mill-space for the production of the Goods hereunder and Seller further agrees that the manufacture (i.e. pipe rolling) of the Goods hereunder shall begin no later than July 29, 2019 and shall proceed on a continuous basis thereafter.

**Purchase Order Exhibits**

       **Exhibit A – Purchase Order Terms and Conditions**
       **Exhibit B – Payment Schedule**
       **Exhibit C – Delivery Date(s) and Liquidated Damages**
       **Exhibit D – Form of Change Order**
       **Exhibit E – Form of Lien and Claim Waivers**

1

34330210.v2

CONFIDENTIAL

EM-HGC019827

*Execution Version*

EXCEPT AS SPECIFIED IN THIS PURCHASE ORDER, THE FOLLOWING DOCUMENTS ARE EXPRESSLY INCORPORATED INTO THIS PURCHASE ORDER AND FORM PART OF THIS ORDER BY THE ACCEPTANCE HEREOF:

(1)  All Exhibits to this Order.

THIS PURCHASE ORDER IS HEREBY AGREED UPON BY THE PARTIES AND HAS BEEN DULY AUTHORIZED BY ALL NECESSARY CORPORATE ACTION AND HAS BEEN EXECUTED AND DELIVERED BY AUTHORIZED REPRESENTATIVES OF EACH PARTY.

**BUYER: PERMICO MIDSTREAM PARTNERS, LLC**

By: _____

Print Name: JEFFREY BEICKER

Title: CEO

Date: 5/22/2019

**SELLER: EDGEN MURRAY CORPORATION**

By: _____

Print Name: Greg Baker

Title: President

Date: 5/16/2019

*[Signatures for Purchase Order]*

2

CONFIDENTIAL

EM-HGC019828

*Execution Version*

## EXHIBIT A

### PURCHASE ORDER TERMS AND CONDITIONS

**THIS DOCUMENT CONTAINS DEFENSE, INDEMNITY, RELEASE AND HOLD HARMLESS PROVISIONS**

1. **Definitions.** The following definitions shall be used for the purpose of interpreting the Purchase Order.

   1.1. "<u>Applicable Laws</u>" has the meaning set forth in Section 8.2 below.

   1.2. "<u>Buyer</u>" means the entity specified in the Purchase Order form.

   1.3. "<u>Buyer Group</u>" means Buyer, its client(s), its contractors (excluding Seller Group) of any tier, its and their respective parents, affiliated and subsidiary entities, and the directors, officers, employees, agents, and representatives of all such entities.

   1.4. "<u>Buyer's Representative</u>" means the person specified as such in the Purchase Order cover, who may, in Buyer's sole discretion, be substituted with another person by written notice to Seller.

   1.5. "<u>Change</u>" means a change to the original Purchase Order issued pursuant to Section 10.

   1.6. "<u>Change Order</u>" means a written instruction issued by Buyer pursuant to Section 10.

   1.7. "<u>Delivery</u>" shall mean Seller's successful delivery of the Goods to the agreed delivery location set forth in the Purchase Order.

   1.8. "<u>Day</u>" shall mean a calendar day.

   1.9. "<u>Defect</u>" or "<u>Defective</u>" has the meaning set forth in Section 20 below.

   1.10. "<u>Delay Liquidated Damages</u>" shall have the meaning set forth in **Exhibit C** to the Purchase Order.

   1.11. "<u>Delivery Date</u>" shall mean the date or dates by which the Goods or part of the Goods shall be delivered to the agreed delivery location, as stated in this Purchase Order.

   1.12. "<u>Existing IP</u>" shall have the meaning set forth in Section 26.2 below.

   1.13. "<u>Force Majeure Event</u>" shall have the meaning set forth in Section 13 below.

   1.14. "<u>Goods</u>" shall mean the goods, materials, equipment, supplies, drawings, data, processes, and all other property and services, including design, expediting, inspection, delivery, installation, and testing, specified or required, to furnish the items ordered in the Purchase Order.

   1.15. "<u>Inspection Period</u>" has the meaning set forth in Section 19 below.

   1.16. "<u>Parties</u>" means Buyer and Seller collectively, and "<u>Party</u>" means either Buyer or Seller, as the context requires.

   1.17. "<u>Price</u>" means all sums payable to Seller as specified in the Purchase Order for provision of the Goods.

   1.18. "<u>Project</u>" means the work being undertaken by Buyer for its client of which the Goods being provided under the Purchase Order form an integral part.

   1.19. "<u>Project IP</u>" has the meaning set forth in Section 26.1 below.

   1.20. "<u>Purchase Order</u>" shall mean the Purchase Order form and all other documents expressly referred to and/or otherwise contained herein, including all Exhibits thereto.

   1.21. "<u>Purchase Order Terms and Conditions</u>" means the terms and conditions set forth in this **Exhibit A** to the Purchase Order.

   1.22. "<u>Seller</u>" means the person, firm, company, or other legal entity as specified in the Purchase Order.

   1.23. "<u>Seller Group</u>" means Seller, its subcontractors and suppliers of any tier, its and their respective parents, affiliated and subsidiary entities, and the directors, officers, employees, invitees, agents, and representatives of all such entities.

   1.24. "<u>subcontractors</u>" means Seller's subcontractors or suppliers, of any tier.

   1.25. "<u>Taxes</u>" shall have the meaning set forth in Section 14 below.

   1.26. "<u>Warranties</u>" has the meaning set forth in Section 20 below.

   1.27. "Warranty Period" has the meaning set forth in Section 20 below.

2. **Acceptance and Controlling Terms.** Seller's acceptance of the Purchase Order shall be evidenced by either Seller's signature on the Purchase Order or Seller's commencement of performance without a signed Purchase Order. The Purchase Order constitutes the entire agreement between the Parties and supersedes any prior correspondence, proposals, or agreements, written or oral, unless specifically set forth in the Purchase Order. Any different or additional terms in Seller's purported acceptance, work ticket, delivery ticket, or invoice shall be null and void and shall not form a part of the Purchase Order. Conflicts among the Purchase Order documents shall be resolved in the following order of precedence: (i) Purchase Order form; (ii) Purchase Order Terms and Conditions; and (iii) any other Exhibits to the Purchase Order. No amendment or waiver to the Purchase Order is valid, nor shall any waiver of rights hereunder be deemed to have occurred, unless the same is done in writing and signed by both Buyer and Seller.

3. **Nature of Agreement.** Seller shall carefully review the drawings, plans, specifications, and other documents relating to the Purchase Order in order to determine the class, quantity, and quality of materials, equipment, and labor that will be required, and Seller should obtain for itself a full understanding of the Goods. Buyer shall not be responsible for the accuracy or sufficiency of any information provided by Buyer to Seller. It is Seller's obligation to bring any conflicts or deficiencies within the Purchase Order to the attention of Buyer and Buyer shall have the sole determination as to applicability and priority of such conflicting or deficient terms or requirements.

34322380.v4

CONFIDENTIAL                                                                                          EM-HGC019829

*Execution Version*

Buyer's decision as to the applicability and priority of such conflicting or deficient terms or requirements shall be final, and all costs incurred in correcting Seller's interpretation shall be for Seller's account.

4. **Relationship of the Parties.** Seller is an independent contractor and neither Seller nor any member of Seller Group is a servant, agent, or employee of Buyer. Buyer is interested only in the results obtained and has only the general right of inspection and supervision in order to secure the satisfactory completion of any Goods. However, Buyer reserves the right to require Seller to schedule the supply or fabrication of the Goods in such a manner to minimize interference with Buyer's other activities or obligations. Neither presence of a Buyer representative or inspector at the location of supply or fabrication of the Goods, nor shall any review, inspection or approval by Buyer representative or inspector (or any failure to so review, inspect or approve), shall relieve Seller from Seller's obligations under the Purchase Order.

5. **Controlling Law and Litigation.** TO THE MAXIMUM EXTENT PERMISSIBLE, THE LAWS OF THE STATE OF TEXAS SHALL GOVERN THE PURCHASE ORDER, EXCLUDING ANY CONFLICTS LAW OR CHOICE OF LAW PRINCIPLES. ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS PURCHASE ORDER, OR THE BREACH THEREOF, SHALL BE DECIDED BY LITIGATION PURSUANT TO THIS SECTION 5. Each Party irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind whatsoever against the other Party in any way arising from or relating to this Purchase Order in any forum other than Harris County, Texas. EACH PARTY IRREVOCABLY AND UNCONDITIONALLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS AND AGREES TO BRING ANY SUCH ACTION, LITIGATION OR PROCEEDING ONLY IN THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON, TEXAS OR, IF SUCH COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION, THE COURTS OF THE STATE OF TEXAS SITTING IN HOUSTON, HARRIS COUNTY, TEXAS. Each Party agrees that a final judgment in any such action, litigation or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Applicable Laws. Each Party further consents to the service of process out of any of the aforementioned courts in any such action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to such Party at its address specified herein for the giving of notices, or by such other notice given in accordance with the rules and procedures of such courts. EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS PURCHASE ORDER IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS PURCHASE ORDER OR THE TRANSACTIONS CONTEMPLATED HEREBY.

6. **Assignment.** Seller may not assign or delegate the Purchase Order in whole or in part, nor pledge any payment by Buyer pursuant to the Purchase Order without the prior written consent of Buyer, and any purported assignment or delegation without Buyer's consent shall be null and void. Buyer may assign the Purchase Order, in whole or in part, to any person or entity, without Seller's consent.

7. **Subcontracting.** Buyer shall have the right to approve all of Seller's subcontractors used in connection with the Goods with a purchase order or subcontract value in excess of [US$50,000]. Seller shall notify Buyer of Seller's intention to place a subcontract or purchase order a reasonable time before formal announcement of award is made. Buyer shall have seven (7) Days, or such other reasonable length of time as dictated by the circumstances, in which to approve the contractor, vendor, or supplier. No subcontract or purchase order shall bind or purport to bind Buyer Group. Nevertheless, Seller shall ensure that any subcontractor or vendor or supplier is bound by and observes the provisions of the Purchase Order and any subcontract or purchase order must be assignable to Buyer without the prior consent of such contractor, vendor or supplier. Seller shall be responsible for all work, acts, omissions, and/or defaults of any subcontractor, vendor, or supplier as fully as if they were work, acts, omissions, and/or defaults of the Seller.

8. **Statutory and Safety Obligations.**

   8.1. Seller shall ensure that appropriate arrangements are in place to protect the health and safety of its employees. Seller shall have established and shall maintain an HSE Management System including Health and Safety Policy as well as Environmental Management System based on ISO 14001 Standard and shall cause its subcontractors to establish and maintain the same. Such Management Systems shall be fully auditable by Buyer, and as a minimum conform to Buyer requirements.

   8.2. Seller Group shall comply with all laws, rules, and regulations (including permits applicable to the Project), whether federal, state, or municipal, which now or in the future may be applicable to all Goods or to Seller's business, equipment, or employees engaged in or in any manner connected with its performance hereunder including but not limited to all health, safety, and environmental statutes, laws, and regulations ("Applicable Laws"). Seller Group shall also comply with Buyer's and its client's safety and security regulations, copies of which are available on request. Seller shall give all notices and shall obtain all permits required to be given or obtained in Seller's name that may relate to the Goods or are required by any statute or regulation and shall bear all costs in connection therewith. Seller will also pack, mark, label, classify, and describe any Goods in accordance with Applicable Laws, including the appropriate regulations for Dangerous Cargo where applicable.

9. **Payment and Invoicing Process.**

   9.1. In consideration of the satisfactory completion of the Purchase Order, Buyer shall make payment to Seller upon the payment terms and invoicing instructions set forth in the Purchase Order. Each detailed price invoice submitted by Seller to Buyer shall clearly state the Purchase Order Number, the item numbers, the settlement terms, and all information required to be stated for any applicable taxes. All invoices shall be provided by Seller in such detail and substantiated as Buyer may direct, and must be accompanied by all documentation necessary to establish the accuracy of all information contained within each invoice. Any time for payment set forth in the cover of the Purchase Order shall commence after Buyer's actual receipt of an invoice and all necessary and/or reasonably requested supporting documentation and completion of all work related to such payment. The payment schedule for Goods shall be set forth in **Exhibit B** to the Purchase Order. Seller acknowledges that the rates and prices contained in the Purchase Order are sufficient to cover all its obligations whether expressed or implied under the Purchase Order. Except as provided in Sections 10 and 11 below, all rates and prices are firm throughout the duration of the Purchase Order and are not subject to adjustment or escalation. Seller shall be deemed to have satisfied itself as to all local

CONFIDENTIAL

EM-HGC019830

*Execution Version*

conditions and other factors that may in any way affect the performance of the Purchase Order, and Buyer shall not be liable for any amounts in excess of the Price, unless otherwise agreed in a Change Order.

9.2. Each Invoice shall be reviewed by Buyer and, upon Buyer's reasonable request, Seller shall furnish such further information as may be reasonably requested by Buyer to validate the amounts invoiced. Unless disputed by Buyer, each Invoice (less any withholdings allowed under this Purchase Order), shall be due and payable no later than thirty (30) Days after it, and all documentation required under this Purchase Order, is received by Buyer. If an Invoice is disputed by Buyer, then payment shall be made for all undisputed amounts owed by Owner and the dispute shall be resolved pursuant to Section 5. Payment on disputed amounts shall be made as soon as such dispute is resolved. Any costs for which Seller does not submit an invoice to Buyer within sixty (60) Days after the date on which the Goods associated with such costs were received by Buyer shall be deemed to have been provided by Seller without compensation.

9.3. Seller shall furnish to Buyer written releases and lien and claim waivers and, if requested by Buyer, written releases and lien and claim waivers from its subcontractors, in the form of **Exhibit E** to the Purchase Order, for all labor, materials, or equipment used in performance of Seller's activities under the Purchase Order. Notwithstanding Buyer's obligation to make timely payments under Section 9.2, Seller's submission of such written releases and lien and claim waivers shall be a condition precedent to Buyer's obligation to make final payment to Seller under this Purchase Order.

9.4. In the event of defects in the Goods or default of Seller, Buyer may, at its election, withhold any monies payable hereunder; however, undisputed portions of invoices shall remain due. Seller shall ensure that any subcontractors and employees are timely paid all amounts due in connection with the Goods and this Purchase Order, and Buyer shall have the right to withhold any payment until Seller makes all such payments. Complete or partial payment by Buyer to Seller shall not be deemed an acceptance of, or waiver of any right to reject to defects in the Goods or any portion thereof.

9.5. Seller shall submit invoices electronically to Accounts Payable at the following email address: jfickessen@permicoenergia.com

9.6. Invoices submitted without a Purchase Order number and supporting documentation may be rejected at Buyer's sole discretion.

9.7. Notwithstanding anything to the contrary in this Purchase Order, subject to Buyer's right to withhold or offset payment to Seller, if Buyer fails to pay undisputed amounts due and owing to Seller and Buyer has failed to cure such failure within thirty (30) days following Seller's written notice to Buyer to cure such failure, Seller may suspend its performance hereunder until Seller receives such amounts.

10. **Buyer-Requested Changes.**

10.1. Buyer reserves the right to issue Changes to the Purchase Order by formal written correspondence signed by Buyer's Representative, including changes to quality, quantity, technical requirements, schedule, method of shipment, place of delivery, and the manner of Seller's performance. If a requested Change affects the Price or any Delivery Date of any Goods, Seller shall, before proceeding, promptly (but in any event no later than seven (7) Days after receipt of such requested Change) prepare and submit to Buyer a written fixed price proposal incorporating any such effects on its pricing, schedule or otherwise, and receive Buyer's prior agreement thereto and the same shall be included in such Change Order in the form of **Exhibit D** to the Purchase Order. Seller shall not undertake to perform a Change without the Parties signing a Change Order and, unless Buyer Representative unilaterally directs Seller to proceed with such Change (see Section 10.2), any costs and expenses incurred by Seller in performing a Change without a signed Change Order in place shall be for Seller's account.

10.2. In the event the Parties are unable to agree on the effect of a requested Change on Seller's pricing, schedule or otherwise, or if Buyer desires that the requested Change be performed immediately without the requirement of a fixed price proposal from Seller in accordance with Section 10.1, Buyer Representative shall nevertheless have the right to unilaterally require Seller to immediately proceed with the requested Change by issuance of a written unilateral Change Order directed to Seller, and Seller shall perform such requested Change at the applicable unit rates set forth in this Purchase Order, with the effect of such unilateral Change Order to be determined as soon as possible. If the Parties cannot agree on the effect of such unilateral Change Order within sixty (60) Days after Buyer's issuance of such unilateral Change Order, then the dispute shall be settled pursuant to Section 5. Pending resolution of such dispute, Seller shall perform the Change as specified in such unilateral Change Order and Buyer shall continue to pay in accordance with this Purchase Order. When Seller and Buyer agree on the effect of such unilateral Change Order, such agreement shall be recorded by execution by the Parties of a Change Order in the form of **Exhibit D** to the Purchase Order, which shall supersede the unilateral Change Order previously issued.

10.3. These Purchase Order Terms and Conditions shall apply to all such Change Orders, modifications, additions, or deletions with the same effect as if they were embodied in the original Purchase Order. Seller agrees that any Change Order accepted by Buyer in writing constitutes a full and final settlement and accord and satisfaction of all effects of the change upon all aspects of the Purchase Order and will compensate Seller fully for such change. Seller further acknowledges and agrees that its sole and exclusive rights to adjust the Price shall be as set forth in this Section 10 and in Section 11 below.

11. **Buyer-Caused Delays.**

11.1. In the event any delay in the commencement, performance or completion of Seller's obligations under this Purchase Order is caused by Buyer, and if such delay is not in any way attributable to Seller or its subcontractor but is caused by Buyer's breach of an express obligation of Buyer under this Purchase Order (or is caused by a suspension in accordance with Section 21), then Seller shall be entitled to an adjustment in the Price and an extension of time to the respective Delivery Dates if (i) such delay affects the performance of any Work that is on the critical path of Seller's schedule, (ii) such delay causes Seller to complete the Work beyond the respective Delivery Date, (iii) Seller is unable to proceed with other work so as not to cause a delay in the respective Delivery Date, and (iv) Seller complies with the notice and Change Order request requirements in Section 11.2 and makes its best efforts to mitigate any such delay. Any adjustment to the Price under this Section 11.1 shall be for

CONFIDENTIAL
EM-HGC019831

*Execution Version*

reasonable, additional direct costs incurred by Seller for such delay, and any adjustments to the Price and the Delivery Dates shall be recorded in a Change Order in the form of **Exhibit D** to the Purchase Order. Seller and Buyer agree that if they execute such a Change Order, any costs or schedule impact arising out of such a delay shall be included in such Change Order.

11.2. If a circumstance arises that may entitle Seller to a Change Order under Section 11.1, Seller shall notify Buyer in writing of the existing of such circumstance no later than seven (7) Days after the date that Seller knew or reasonably should have known of the first occurrence or beginning of such circumstance, provided that if such circumstance is an emergency, notice shall be given immediately. In such notice, Seller shall state in detail all known and presumed facts upon which its claim is based, including the character, duration and extent of such circumstance, the date Seller first knew of such circumstance, any activities impacted by such circumstance, the cost and time consequences of such circumstance and any other relevant details or information. As soon as reasonably practicable after giving Buyer such written notice, but no later than seven (7) Days after the completion of each such circumstance, Seller shall provide Buyer a proposed Change Order and further written notice detailing why Seller believes a Change Order should be issued, plus all documentation reasonably requested by or necessary for Buyer to determining the need for such Change Order and setting for the effect, if any, such proposed Change Order would have on the Price or the Delivery Dates. The Parties acknowledge that Buyer will be prejudiced if Seller fails to provide the notices and proposed Change Order as required under this Section 11.2, and agree that such requirements are an express condition precedent necessary to any right for an adjustment in the Price, any Delivery Dates, or any other modification to any other obligation of Seller under this Purchase Order. Verbal notice, shortness of time, or Buyer's actual knowledge of a particular circumstance shall not waive, satisfy, discharge or otherwise excuse Seller's strict compliance with this Section 11.2.

12. **Time of Performance.** Time is of the essence of the Purchase Order. If Buyer, in its sole opinion, believes that the rate of progress of the Goods is too slow to ensure performance and completion in accordance with any Delivery Date, then Buyer shall notify Seller of the same and Seller shall thereupon take such steps, at its sole cost, as are necessary to expedite progress so as to complete and deliver the Goods by the applicable Delivery Date. In the event that Seller fails to meet any Delivery Date (which may be extended in accordance with Section 11 or 13), Buyer, without limiting its remedies available under the Purchase Order, in equity or at law, shall be entitled to impose Delay Liquidated Damages until Seller achieves the respective Delivery, *provided that* Seller's total liability for such Delay Liquidated Damages under this Purchase Order shall not exceed the aggregate limitation set forth in **Exhibit C**. In the event such Delay Liquidated Damages are owed, Buyer may, in its sole discretion, either (i) invoice Seller for such Delay Liquidated Damages and, within thirty (30) Days of Seller's receipt of such invoice, Seller shall pay Buyer such amounts or (ii) offset amounts that may otherwise be due to Seller under this Purchase Order in the amount of such Delay Liquidated Damages. The Parties agree that all amounts of Delay Liquidated Damages specified in this Purchase Order are a genuine and reasonable pre-estimate of the losses that may be sustained by Buyer in the event that Seller fails in its respective obligations under the Purchase Order and are not a penalty, and having negotiated in good faith for such specific Delay Liquidated Damages, the Parties shall be estopped from contesting the validity or enforceability of such Delay Liquidated Damages. If the amount of such Delay Liquidated Damages is held to be unenforceable due to the urging by or on behalf of Seller, notwithstanding any other provision of these Purchase Order Terms and Conditions to the contrary, Seller specifically agrees to pay Buyer all actual damages incurred by Buyer related to Seller's delay in performance and all costs incurred by Buyer in proving the same (including all reasonable attorney's fees and court costs). Such Delay Liquidated Damages shall be Buyer's sole and exclusive damages for delay with respect to delays caused by Seller.

13. **Force Majeure.** In the event Seller or Buyer is delayed in performing any of their respective obligations in the Purchase Order due to catastrophic storms or floods, tornadoes, hurricanes, earthquakes and other acts of God, war, riots, civil insurrection, acts of the public enemy, commercial embargoes, acts of civil or military authority, or any changes in Applicable Laws (each a "<u>Force Majeure Event</u>"), such delay shall be excused and the period of such delay shall be added to the time for performance of the obligation delayed, provided that such act or event (i) delays or renders impossible the affected Party's performance of its obligations under this Purchase Order, (ii) is beyond the reasonable control of the affected Party, not due to its fault or negligence and was not reasonably foreseeable, and (iii) could not have been prevented or avoided by the affected Party through the exercise of due diligence, including the expenditure of any reasonable sum taking into account the Price. If any delay occurs, or is anticipated to occur, due to a Force Majeure Event, the affected Party shall promptly, but in no event later than ten (10) Days after such Party knew or reasonably should have known of such circumstance, notify the other Party in writing of such delay, or expected delay, including the cause and estimated duration. Furthermore, the Party delayed shall, at no cost to the other Party, exercise due diligence to shorten and avoid the delay and shall keep the other Party advised in writing as to the continuance of the delay and steps taken to shorten or to terminate the delay. Seller shall not be entitled to, and hereby waives recovery of, any costs or damages suffered as a result of a Force Majeure Event. Extension to the applicable Delivery Date(s) shall constitute the sole liability of Buyer, and Seller's sole remedy for delays caused by a Force Majeure Event. For avoidance of doubt, Force Majeure shall not include any of the following: (a) economic hardship, (b) changes in market conditions, (c) late delivery or failure of Goods or component parts of such Goods, unless such late delivery or failure was itself caused by Force Majeure, (d) labor availability, strikes, or other similar labor actions, or (e) climatic conditions (including rain, snow, wind, temperature and other weather conditions), tides, or seasons, provided that such climatic conditions, tides or seasons do not include catastrophic storms or floods, tornadoes, hurricanes, earthquakes and other acts of God, regardless of the magnitude, severity, duration or frequency of such climatic conditions, tides or seasons, or (f) nonperformance or delay by Seller or its subcontractors, unless such nonperformance or delay was otherwise caused by Force Majeure.

14. **Taxes.** Unless stated otherwise within the Purchase Order, Seller's prices are inclusive of all applicable taxes (whether imposed on the sale or Seller's income or wages), permits, and fees (including all applicable duties and tariffs whether or not existing at the date of this Purchase Order) (collectively "Taxes"). SELLER SHALL INDEMNIFY, DEFEND, AND HOLD HARMLESS BUYER GROUP FROM THE REPORTING, FILING, AND PAYMENT OF ANY TAXES (AND ANY RELATED FINES, PENALTIES, OR INTEREST) IMPOSED DIRECTLY OR INDIRECTLY ON

CONFIDENTIAL

EM-HGC019832

*Execution Version*

BUYER GROUP AS A RESULT OF SELLER'S SUPPLY OF GOODS UNDER THE PURCHASE ORDER. Buyer may withhold from sums otherwise due to Seller under the Purchase Order any Taxes or amounts required to be withheld or paid to the appropriate taxing authorities, and Buyer shall provide Seller with receipts evidencing payment to such authorities of the Taxes or amounts so withheld.

15. **Offset.** Buyer reserves the right to withhold from Seller's payment (i) any amount owed to Buyer by Seller or its affiliates under this Purchase Order or any other purchase order related to the Project between Buyer and Seller or its affiliates, or (ii) any amount imposed on Buyer from a third party for which Seller is liable under this Purchase Order.

16. **Title and Risk of Loss.** Title to the Goods shall pass to Buyer upon the earlier of (i) Delivery to Buyer in accordance with this Purchase Order or (ii) payment by Buyer for such Goods. Seller shall specifically identify all Goods at the earliest possible time and shall clearly mark and segregate those Goods in Seller's facility for shipment to Buyer. Regardless of title transfer, Seller shall assume proper care and custody of, and shall bear all risk of loss, to the Goods and shall either insure or self-insure the Goods for such loss or damage until Delivery occurs. Where Buyer or its client provides free issue materials for incorporation in the Goods, such materials shall remain the property of Buyer, but the risk of loss shall be borne by Seller until Delivery of such Goods occurs. Seller shall use such materials economically and any surplus shall be accounted for to Buyer and disposed of in accordance with Buyer's instructions. Waste, loss of, or damage to such materials arising from bad workmanship or failure of Seller to maintain such materials in good order and condition shall be made good at Seller's expense. All such free issue materials provided by Buyer shall be deemed to be in good condition when received by or on behalf of Seller unless Seller otherwise notifies Buyer within forty eight (48) hours after delivery to Seller.

17. **Liens/Encumbrances.** Seller hereby subordinates any mechanics' and materialmen's liens or other claims or encumbrances that may be brought by Seller against any or all of the Goods, Buyer Group's property or any hydrocarbon product associated with such property to any liens granted in favor of Buyer Group's lenders for the Project, whether such lien in favor of such lenders is created, attached or perfected prior to or after any such liens, claims or encumbrances, and Seller shall require its subcontractors to similarly subordinate their lien, claim and encumbrance rights. Seller agrees to comply with reasonable requests of Buyer for supporting documentation required by such lenders in connection with such subordination, including any necessary lien subordination agreements. Nothing in this Section 17 shall be construed as a limitation on or waiver by Seller of any of its rights under Applicable Laws to file a lien or claim or otherwise encumber the Goods or Buyer Group's property as security for any payments owed to it by Buyer hereunder which are past due, provided that such lien, claim or encumbrance shall be subordinate to any liens granted in favor of Buyer Group's lenders as set forth above. Seller agrees to keep and maintain the Goods free from any liens asserted by Seller or its subcontractors both during and after completion of the Purchase Order. SHOULD ANY SUBCONTRACTOR OR ANY PERSON ACTING THROUGH OR UNDER SELLER FILE A LIEN OR OTHER ENCUMBRANCE AGAINST THE GOODS OF BUYER GROUP'S PROPERTY, SELLER SHALL, AT ITS SOLE COST AND EXPENSE, REMOVE AND DISCHARGE BY PAYMENT, BOND, OR OTHERWISE, SUCH LIEN OR ENCUMBRANCE WITHIN THIRTY (30) DAYS OF THE FILING OF SUCH LIEN OR ENCUMBRANCE. IF SELLER FAILS TO DO SO WITHIN SUCH THIRTY (30) DAYS, BUYER MAY, IN ADDITION TO ANY OTHER RIGHTS IT MAY HAVE UNDER THIS PURCHASE ORDER OR OTHERWISE, REMOVE AND DISCHARGE SUCH LIEN OR ENCUMBRANCE USING WHATEVER MEANS IT DEEMS APPROPRIATE (INCLUDING DIRECT PAYMENT), AND ANY DAMAGES, COSTS, LOSSES AND EXPENSES SO INCURRED BY BUYER SHALL BE PAID BY SELLER TO BUYER NO LATER THAN THIRTY (30) DAYS AFTER RECEIPT OF AN INVOICE FOR SUCH COSTS FROM BUYER. SELLER SHALL INDEMNIFY, DEFEND, AND HOLD HARMLESS BUYER GROUP FROM AND AGAINST ANY LIABILITY, INCLUDING BONDS AND ALL REASONABLE ATTORNEY'S FEES, RESULTING FROM SELLER'S FAILURE TO COMPLY WITH ITS OBLIGATIONS IN THIS SECTION 17.

18. **Quality of Goods.**

    18.1. Seller shall ensure that all Goods conform to the warranties set forth in Section 20. All work shall be performed in a good and workmanlike manner by qualified and competent personnel and all equipment and tools provided hereunder shall at all times be maintained in first class operating condition by Seller. Buyer reserves the right to require the replacement of any personnel, equipment, or tools that do not comply with the foregoing provisions at Seller's cost.

    18.2. Seller shall have and maintain a Quality Management System based on ISO 9001 standard as a means of ensuring that the Goods conform to specified requirements. Such Quality Management System shall be fully auditable by Buyer and as a minimum conform to Buyer requirements. Seller hereby agrees to flow down to, and require the foregoing requirements from, its subcontractors.

19. **Inspection Testing and Expediting.** Seller is responsible for the design (except to the extent the design is provided by Buyer), fabrication, manufacture, and construction of the Goods and for compliance with all applicable terms, conditions, specifications, drawings, and codes set forth in this Purchase Order and under Applicable Laws. Seller shall have the obligation and Buyer and its client shall have the right to inspect, test, and expedite any Goods in the process of being manufactured, stored, in transit, and upon Delivery, to assure technical and commercial compliance therewith as well as adherence to schedule. Seller shall make available at its own expense all tools, instruments, facilities, services, and materials necessary for carrying out tests on the Goods, as may be required by Buyer, and when requested, the Goods shall be completely assembled for such tests and at Buyer's option shall be dismantled for inspection before dispatch. Where reasonably practical, Seller shall give at least fourteen (14) Days' notice to Buyer that the Goods are ready for inspection and testing. In connection with such testing, Seller shall supply Buyer with data, drawings, specifications, certificates of analysis, test results, quality documentation, schedules, and other documents and information as requested by Buyer. Notwithstanding the foregoing, from Delivery of any Goods, Buyer will have ten (10) Days ("Inspection Period") to reasonably inspect the Goods to determine whether such Goods substantially conform to the requirements of this Purchase Order. In the event Buyer provides its notice of acceptance of such Goods or fails to provide a notice of rejection of such Goods within the Inspection Period, Buyer shall be deemed to have accepted such Goods, without limitation to Seller's Warranty obligations in Section 20. Seller shall not be relieved of its obligations under the Purchase Order or otherwise by the inspection, testing, review, or waiver of any rights thereof by Buyer, or approval or acceptance of the Goods by Buyer or its client.

Page 5 of 11

*Execution Version*

20. **Warranty.** Seller warrants that the Goods shall (a) be free of any lien, encumbrance, or security interest; (b) be in strict conformance to the specifications in the Purchase Order, drawings, and other technical requirements (or, if sold by sample or model, in conformance to such sample or model); (c) be fit for their usual, customary and generally intended use, and of sufficient size and capacity, and materials to properly perform the functions specified in the Purchase Order; (d) conform to all Applicable Laws, ordinances, codes, and regulations; and (e) be free from defects in materials and workmanship (the "<u>Warranties</u>"). If Buyer discovers any breach of any Warranties as to the Goods (a "<u>Defect</u>" or "<u>Defective</u>" Goods), then Buyer may notify Seller in writing of such Defective Goods. Provided that Buyer's notice is issued within the Warranty Period (defined below), Seller shall promptly correct, repair, or replace, without cost to Buyer, the Defective Goods in question. Seller's warranty with respect to the Goods shall commence upon Delivery of the Goods and remain valid for the earlier of (i) eighteen (18) months after Delivery of the Goods or (ii) twelve (12) months after the in-service date of the Goods (the "<u>Warranty Period</u>"). The Warranties shall run to Buyer, its successors and assigns. Any Defective Goods repaired, replaced or otherwise restored under the terms hereof shall be additionally warranted on like terms for the longer of the original Warranty Period stated above or one hundred eighty (180) Days from acceptance of such repair, replacement, restoration, correction or re-performance. If Seller fails to proceed promptly (but not to exceed five (5) Days after receipt of Buyer's notice detailing a breach of any Warranty) with the repair or replacement of the defective Goods, or if Seller does not complete such repair or replacement of the Defective Goods on an expedited basis, Buyer may repair or replace the Defective Goods and charge all related costs, including access costs, to Seller without modifying the Warranties; *provided, however*, if such Defective Goods materially affect the Goods, the activities of Buyer's other contractors or presents an imminent threat to the safety or health of any person or property and Buyer knows of such Defective Goods, Buyer may (in addition to any other remedies that it has under the Purchase Order) correct such Defective Goods without giving prior written notice to Seller, and, in that event, Seller shall be liable to Buyer for all reasonable costs and expenses incurred by Buyer in connection with correcting such Defective Goods and arising out of or relating to such Defective Goods and shall pay Buyer (directly or by offset, Buyer's sole discretion) an amount equal to such reasonable costs and expenses (which reasonable costs and expenses shall be adequately documented and supported by Buyer). EXCEPT FOR ANY EXPRESS WARRANTIES UNDER THIS PURCHASE ORDER, THE PARTIES HEREBY DISCLAIM ANY AND ALL OTHER WARRANTIES, INCLUDING THE IMPLIED WARRANTY OF MERCHANTABILITY AND IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE. Seller shall have no liability to Buyer, for damage or defect to the Goods after Delivery to the extent caused by: (i) improper repairs or alterations, misuse, neglect or accident by Buyer; or (ii) operation, maintenance or use of Goods or any component thereof in a manner not in compliance with a material requirement of operation and maintenance manuals delivered by Seller to Buyer. THE REMEDIES SET FORTH HEREIN ARE THE SOLE AND EXCLUSIVE REMEDIES FOR A BREACH OF ANY WARRANTY DISCOVERED AFTER DELIVERY OF THE RELATED GOODS AND ACCEPTANCE BY BUYER THEREOF, PROVIDED THAT THIS SHALL NOT LIMIT OR MODIFY: (I) SELLER'S LIABILITY FOR GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; (II) SELLER'S INDEMNIFICATION OBLIGATIONS CONTAINED HEREIN, REGARDLESS OF THE NATURE OF ANY CLAIM REQUIRING INDEMNIFICATION; (III) BUYER'S RIGHT TO TERMINATE THIS PURCHASE ORDER; AND (IV) BUYER'S RIGHT TO WITHHOLD PAYMENT AS SET FORTH IN THIS PURCHASE ORDER.

21. **Suspension.** Buyer may suspend all or any part of the Purchase Order by providing written notice to Seller. Upon receipt of such notice, Seller shall take all reasonable actions to preserve and protect all completed Goods and all work in progress, including materials, as well as taking reasonable measures to assure a prompt resumption of work once the suspension ends. If adequate documentation, acceptable to Buyer, supporting a request for additional costs or schedule relief resulting from such suspension is provided by Seller to Buyer, an adjustment shall be made to the Price and/or applicable Delivery Date(s) in accordance with Section 11.

22. **Termination.** Buyer may cancel all or part of the Purchase Order for any reason by giving written notice to Seller of such termination, and take immediate possession of all Goods and any materials or items (including all specifications, drawings, and technical data) having been identified or incorporated by Seller as a part of the Goods. Seller shall maintain proper care and custody of the cancelled work or Goods until Buyer can take possession. Seller shall submit to Buyer written notice of its intention to submit claims based upon such cancellation within thirty (30) Days from the date of notice of cancellation, and all such claims shall be made in detail and substantiated by bills, receipts, and similar documents within thirty (30) Days thereafter, or such claims shall be waived. Buyer shall pay Seller the order price of any finished Goods delivered and accepted by Buyer, plus the cost to Seller, excluding profits and losses, of any work substantially in progress and reasonable cancellation costs incurred as a result of Buyer's cancellation. Seller shall have a duty to mitigate its costs and expenses associated with said cancellation, including using reasonable efforts, if so directed by Buyer, to resell Goods delivered and any work-in-progress.

23. **Default.** Seller shall be in default if it (i) breaches any of the terms and conditions of the Purchase Order, (ii) becomes insolvent, makes an assignment for benefit of its creditors, or voluntarily or involuntarily is placed in bankruptcy; (iii) fails to timely ship any Goods to complete any Delivery by the applicable Delivery Date; (iv) breaches Applicable Laws; (v) fails to timely pay any of its subcontractors in relation to this Purchase Order or fails to perform its obligations under Section 17. Buyer has the right of anticipatory default and may take possession of any and all Goods if Seller does not respond to Buyer's demand for adequate assurance of due performance within a reasonable time not exceeding seven (7) Days. In the event of default by Seller, Buyer may, without prejudice to any of its other rights under the Purchase Order, in equity or at law, terminate the Purchase Order in whole or in part in accordance with Section 22. Buyer shall have the right to retain any Goods previously delivered and Seller shall be liable to Buyer for all costs incurred by Buyer as a result of Seller's default, including the cost to complete or procure any remaining Goods specified in the Purchase Order. If it is later determined in accordance with Section 5 that Seller was not in default at the time of termination, then such termination shall be considered a termination for convenience and Seller shall be compensated in accordance with Section 22.

24. **I**NDEMNITIES**.**

CONFIDENTIAL

EM-HGC019834

24.1. TO THE FULLEST EXTENT PERMITTED BY LAW, SELLER SHALL RELEASE, INDEMNIFY, DEFEND, AND HOLD HARMLESS BUYER GROUP, FROM AND AGAINST ALL CLAIMS, DEMANDS, PROCEEDINGS, DAMAGES, COSTS (INCLUDING ALL REASONABLE ATTORNEYS' FEES, CONSULTANT FEES AND COURT COSTS), LOSSES, LIABILITIES, AND EXPENSES ARISING OUT OF OR RELATED TO THIS PURCHASE ORDER ("CLAIMS") FOR:

   (I)   PERSONAL INJURY, SICKNESS OR DEATH OF SELLER GROUP PERSONNEL;

   (II)  SELLER'S FAILURE TO COMPLY WITH ANY AND ALL APPLICABLE LAWS;

   (III) POLLUTION (INCLUDING CLEAN-UP COSTS) EMANATING FROM SELLER GROUP'S PROPERTY AND EQUIPMENT WHETHER OWNED, LEASED OR HIRED;

   (IV) ANY INFRINGEMENT OR ALLEGED INFRINGEMENT OF ANY PATENT, REGISTERED DESIGN, COPYRIGHT, TRADEMARK, OR OTHER INTELLECTUAL PROPERTY RIGHT, OR TRADE SECRET MISAPPROPRIATION ARISING OUT OF OR IN CONNECTION WITH THE PERFORMANCE OF THE PURCHASE ORDER OR ANY USE OF THE GOODS, UNLESS BUYER DICTATES OR SUPPLIES THE INFRINGING DESIGN OR INFORMATION;

   (V)  PERSONAL INJURY, SICKNESS, OR DEATH OF ANY PERSON (OTHER THAN SELLER GROUP PERSONNEL) CAUSED BY OR RESULTING FROM THE NEGLIGENCE, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY MEMBER OF SELLER GROUP; AND

   (VI) LOSS OF OR DAMAGE TO OR LOSS OF USE OF PROPERTY ANY PERSON CAUSED BY OR RESULTING FROM THE NEGLIGENCE, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY MEMBER OF SELLER GROUP.

24.2. BUYER SHALL RELEASE, INDEMNIFY, DEFEND, AND HOLD HARMLESS SELLER GROUP FROM AND AGAINST ALL CLAIMS FOR:

   (I)   PERSONAL INJURY, SICKNESS OR DEATH OF BUYER PERSONNEL; AND

   (II)  POLLUTION (INCLUDING CLEAN-UP COSTS) EMANATING FROM BUYER'S EQUIPMENT WHETHER OWNED, LEASED, OR HIRED.

24.3. WITH RESPECT TO THE INDEMNITY OBLIGATIONS OF SELLER UNDER SECTIONS 24.1(V) AND (VI) ABOVE, IN THE EVENT OF JOINT OR CONCURRENT NEGLIGENCE OR FAULT OF BOTH PARTIES, SELLER'S OBLIGATION THEREUNDER SHALL BE LIMITED TO ITS ALLOCABLE SHARE OF SUCH JOINT OR CONCURRENT NEGLIGENCE OR FAULT.

24.4. SELLER SHALL RELEASE, INDEMNIFY, DEFEND, AND HOLD HARMLESS BUYER GROUP FROM AND AGAINST ALL CLAIMS FOR INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY, OR CONSEQUENTIAL DAMAGES OR LOSSES INCLUDING BUT NOT LIMITED TO DAMAGES OR LOSSES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFITS, LOST BUSINESS, OR BUSINESS INTERRUPTIONS ("CONSEQUENTIAL LOSSES") SUFFERED BY ANY MEMBER OF SELLER GROUP. EXCEPT FOR ANY DELAY LIQUIDATED DAMAGES PROVIDED IN THE PURCHASE ORDER, BUYER SHALL RELEASE, INDEMNIFY, DEFEND, AND HOLD HARMLESS SELLER GROUP FROM AND AGAINST ALL CLAIMS FOR CONSEQUENTIAL LOSSES SUFFERED BY BUYER.

24.5. NOT LATER THAN TWENTY **(20)** DAYS AFTER RECEIPT OF WRITTEN NOTICE FROM A MEMBER OF BUYER GROUP TO SELLER OF ANY CLAIMS, DEMANDS OR CAUSES OF ACTION ASSERTED AGAINST SUCH MEMBER OF BUYER GROUP FOR WHICH SELLER HAS INDEMNIFICATION, DEFENSE AND HOLD HARMLESS OBLIGATIONS UNDER THIS PURCHASE ORDER, SELLER SHALL AFFIRM IN WRITING BY NOTICE TO SUCH MEMBER OF BUYER GROUP THAT SELLER WILL INDEMNIFY, DEFEND AND HOLD HARMLESS SUCH MEMBER OF BUYER GROUP AND SHALL, AT SELLER'S SOLE COST AND EXPENSE, ASSUME ON BEHALF OF THE MEMBER OF BUYER GROUP AND CONDUCT WITH DUE DILIGENCE AND IN GOOD FAITH THE DEFENSE THEREOF WITH COUNSEL SELECTED BY SELLER AND REASONABLY SATISFACTORY TO SUCH MEMBER OF BUYER GROUP. IN THE EVENT OF THE FAILURE OF SELLER TO PERFORM FULLY IN ACCORDANCE WITH THE DEFENSE OBLIGATIONS UNDER THIS SECTION **24.5,** SUCH MEMBER OF BUYER GROUP MAY, AT ITS OPTION, AND WITHOUT RELIEVING SELLER OF ITS OBLIGATIONS HEREUNDER, SO PERFORM, BUT ALL DAMAGES, COSTS AND EXPENSES (INCLUDING ALL REASONABLE ATTORNEYS' FEES, CONSULTANT FEES, SETTLEMENT PAYMENTS AND JUDGMENTS) SO INCURRED BY SUCH MEMBER OF BUYER GROUP IN THAT EVENT SHALL BE REIMBURSED BY SELLER TO SUCH MEMBER OF BUYER GROUP, TOGETHER WITH INTEREST ON SAME FROM THE DATE ANY SUCH COST AND EXPENSE WAS PAID BY SUCH MEMBER OF BUYER GROUP UNTIL REIMBURSED BY SELLER.

24.6. In the event the laws of a state that apply to this Purchase Order void or limit the enforceability of the foregoing indemnity obligations, the Parties agree that the indemnity obligations affected shall be automatically revised so that they are enforceable to the maximum extent permitted by the laws of Texas.

24.7. THE AGGREGATE LIABILITY OF SELLER WITH RESPECT TO ALL CLAIMS ARISING OUT OF THE SUPPLY OF GOODS, SELLER'S PERFORMANCE OR NON-PERFORMANCE OF SERVICES OR OTHER OBLIGATIONS IN CONNECTION WITH OR PURSUANT TO THIS PURCHASE ORDER, OR ANY OTHER CLAIM ARISING IN CONNECTION WITH THIS PURCHASE ORDER, EXCEPT FOR ANY DELAY LIQUIDATED DAMAGES AS PROVIDED IN EXHIBIT C OF THIS PURCHASE ORDER, WHETHER SUCH CLAIM IS BASED ON CONTRACT, TORT (INCLUDING NEGLIGENCE) OR BY OPERATION OF LAW, SHALL NOT EXCEED ONE HUNDRED PERCENT (100%) OF THE PRICE OF THIS PURCHASE ORDER; PROVIDED THAT, NOTWITHSTANDING THE FOREGOING, THE LIMITATION OF LIABILITY IN THIS SECTION **24.7** SHALL NOT (I) APPLY TO SELLER'S INDEMNIFICATION OBLIGATIONS UNDER THIS PURCHASE ORDER FOR THIRD PARTY CLAIMS; (II) APPLY TO SELLER'S OBLIGATION TO DELIVER TO BUYER FULL LEGAL TITLE TO AND OWNERSHIP OF ALL OR ANY PORTION OF THE GOODS AS REQUIRED UNDER THIS PURCHASE ORDER; (III) INCLUDE THE PAYMENT OF PROCEEDS UNDER ANY INSURANCE POLICY REQUIRED UNDER THIS PURCHASE ORDER; OR (IV) APPLY IN THE EVENT SELLER ABANDONS ANY OF ITS OBLIGATIONS UNDER THIS PURCHASE ORDER.

25. Insurance.

25.1. Seller shall, at all times during the term of the Purchase Order and at its cost and expense, buy and maintain insurance policies from insurers with an [A.M. Best Rating of "A-X"] or better. Buyer shall have the right to reject any insurance selected by Seller for the purposes of this Purchase Order for reasonable cause. Seller and its subcontractors shall be responsible for the payment of all deductibles for any insurance required under this Purchase Order.

25.2. Seller shall provide written notice thirty (30) Days before materially altering, amending, canceling, or failing to renew any insurance referred to herein.

CONFIDENTIAL

EM-HGC019835

*Execution Version*

25.3. Before starting Seller's performance under this Purchase Order, Seller shall furnish Buyer with a certificate of insurance evidencing compliance with the insurance requirements specified herein.

25.4. With the exception of Subsection 25.8.1, each member of Buyer Group shall be named as an additional insured on all insurance policies specified herein, to the extent of the obligations of Seller assumed under this Purchase Order.

25.5. All insurance provided hereunder, including primary, excess, and/or umbrella insurance, shall state that the insurance provided to the additional insureds specified in Section 25.4 is primary and non-contributory to any other insurance or self-insurance programs afforded to or maintained by such additional insureds. The coverage provided to such additional insureds must be at least as broad as that provided to the first named insured on each policy. To the fullest extent permitted by law, all insurance Seller furnishes in compliance with this Section shall include a waiver of subrogation in favor of such additional insureds.

25.6. By requiring insurance herein, Buyer does not represent that coverage and limits will be adequate to protect Seller and such coverage and limits shall not limit Seller's indemnity obligations set forth in Section 24. Any waiver or modification of the insurance requirements stated herein must be agreed to in writing by Buyer.

25.7. Any failure by Seller to obtain and maintain the required coverages, including additional insured requirements, shall constitute a breach hereof, and Seller shall be solely responsible for any loss suffered as a result of such deficiency in coverage.

25.8. Prior to the commencement of Seller's performance under this Purchase Order, Seller shall purchase and maintain insurance of the following types of coverages and limits of liability:

25.8.1. **Workers Compensation/Employers Liability** - Seller shall maintain a Workers Compensation policy complying with all of the statutory benefits required by the Workers Compensation and Occupational disease laws of the state and/or other locations where work is performed, or similar social insurance in accordance with Applicable Laws that may be applicable to those employees. The policy shall be endorsed to provide employer's liability coverage for the following: (1) endorsements to cover all states in which work is performed; and (2) "alternate employer" endorsement for Buyer's benefit.

25.8.2. **Commercial General Liability** - Provided on a current ISO occurrence form, with minimum limits of $1,000,000 per occurrence and $2 million aggregate. Such policy shall be endorsed specifically to include the following coverage: property damage arising from explosion, collapse, or underground damage; products and completed operations for the duration of the warranty period; sudden and accidental pollution and contamination coverage; contractual liability; and care, custody, and control exclusion eliminated. Coverage shall be maintained from commencement of the Seller's performance under this Purchase Order until completion of the Buyer's Project.

25.8.3. **Business Automobile Liability** - With minimum limits of $1,000,000 per occurrence. Such policy shall be endorsed specifically to include owned, hired, and non-owned vehicles, including coverage for all vehicles used in connection with Seller's performance, and including coverage for loading and unloading.

25.8.4. **Property Insurance -** Seller shall maintain an "all risk" Property Insurance policy with limits sufficient to cover the Seller's machinery and equipment for its replacement value, and coverage for damage to any machinery, equipment, or other items in the care, custody, and control of Seller.

25.8.5. **Excess Liability** - Providing coverage excess to, and at least as broad as, the Commercial General Liability, Employers' Liability, and Business Automobile Liability, with limits of $5,000,000 per occurrence. Coverage shall be maintained from commencement of the Seller's performance under this Purchase Order until completion of the Buyer's Project.

25.9. If Seller neglects, fails, or refuses to (a) obtain and keep current the insurances specified herein; (b) submit insurance certificates or copies of renewal certificates; or (c) make available for inspection by Buyer the receipts for current premiums, then Buyer shall have the right to procure any such insurances at Seller's expense and to deduct the cost thereof from any sums that may be or become due to Seller hereunder. Seller's failure to secure such insurance coverage shall in no way relieve Seller from the obligations of this Purchase Order. IN THE EVENT THAT LIABILITY FOR ANY CLAIM IS DENIED BY THE UNDERWRITER OR UNDERWRITERS, IN WHOLE OR IN PART, BECAUSE OF SELLER'S FAILURE TO MAINTAIN THE INSURANCE REQUIRED HEREIN, SELLER SHALL RELEASE, INDEMNIFY, DEFEND, AND HOLD BUYER GROUP HARMLESS AGAINST ALL CLAIMS THAT WOULD OTHERWISE BE COVERED BY THE INSURANCE AND ANY OTHER DAMAGES, INCLUDING REASONABLE ATTORNEY'S FEES, RESULTING FROM THE LACK OF INSURANCE REQUIRED HEREIN.

26. **Patents and Other Proprietary Rights.**

26.1. Seller shall promptly disclose to Buyer in writing any and all ideas, conceptions, inventions, improvements, techniques, processes, or other valuable discoveries, whether patentable or not, and any original works of authorship, software, copyrightable materials, data, results, know-how, or other proprietary information that are conceived, developed, created, or acquired by Seller (or its agents) solely or jointly with others in connection with Seller's performance of the Purchase Order (the "Project IP"). Subject to Section 26.2, all copyrights, patents, trademarks, trade secrets, mask rights, or other intellectual property rights associated with any Project IP shall belong exclusively to Buyer and, with respect to works of authorship, shall be considered "works made for hire" for Buyer. To the extent any Project IP is not considered a work made for hire, Seller agrees to assign and hereby assigns, and shall cause its employees and agents automatically to assign, at the time of creation of the Project IP, without any requirement of further consideration, any rights, title, or interest it or they may have in such Project IP, including any patents, copyrights, or any other intellectual property rights pertaining thereto.

26.2. Notwithstanding Section 26.1, each Party shall retain ownership of all of its ideas, conceptions, inventions, improvements, techniques, processes, or other valuable discoveries, whether patentable or not, and any original works of authorship, software, copyrightable materials, data, results, know-how, or other proprietary information that are conceived, developed, created, or

CONFIDENTIAL

EM-HGC019836

*Execution Version*

acquired prior to entering into the Purchase Order ("Existing IP"), regardless of whether the Existing IP is used within or to create the Goods. In the event that the Goods require the use of Seller's Existing IP, Seller hereby grants to Buyer Group a worldwide, fully paid up, perpetual, irrevocable, sublicensable, assignable, non-exclusive license to use Seller's Existing IP for whatever extent and purpose needed for the Project (including tie-ins to the Project). Such license shall include, without limitation, the right to use and/or reproduce Seller's operating and maintenance manuals, technical publications, prints, drawings, training manuals, and other similar supporting documentation and sales literature.

27. **Confidentiality and Publicity.** Seller shall not use for any purpose whatsoever, other than for Seller's performance of the Purchase Order, any information, data, drawings, and/or other documents given to Seller by Buyer. Seller shall take all reasonable steps to ensure that such information, data, documents, and drawings are not disclosed to any third parties and shall be returned to Buyer upon completion of the Goods. Seller shall not engage in any acts of publicity (including revealing any details of this Purchase Order or the Project to the press or any news-disseminating agency) or publicize any generalities or details about the Purchase Order, Buyer, or its clients, including use of any details concerning this Purchase Order in advertising, promotional or other printed material, without the prior written consent from Buyer. The provisions of this Section 27 shall not apply to information which (i) is or becomes generally available to the public through no act or fault of any member of Seller Group; (ii) is already in the possession of the Seller prior to disclosure by the Buyer and was not received from the Buyer; (iii) is rightfully received from a third party who did not receive the same from the Buyer; or (iv) is required by law or governmental agency to be disclosed, after the Seller notifies the Buyer of the disclosure requirements and affords the Buyer and opportunity to object and minimize such disclosure.

28. **Documentation and Audit Rights.** Seller shall maintain all records and accounts pertaining to the Goods for a period of three (3) years after final payment under the Purchase Order. Buyer shall have the right to audit, copy, and inspect or cause to have audited, copied, and inspected such records and accounts at all reasonable times during the course of Seller's performance of this Purchase Order and such three (3) year period for the purpose of verifying Seller's invoices and its compliance with the Purchase Order (except as set forth in Section 31.3).

29. **Survival.** The Parties agree that the termination of the Purchase Order or Delivery performed hereunder shall not release the Parties from obligations which expressly or by their nature survive or extend beyond the Purchase Order termination or completion of the Goods. Without limiting the generality of the foregoing, Sections 3, 4, 5, 10, 11, 12, 13, 16, 17, 18, 20, 21, 22, 23, 24, 25, 26, 27, 28, 30, 31, 32 and this Section 29 shall survive termination or expiration of this Purchase Order or Delivery performed hereunder.

30. **Anti-Corruption Compliance.**

    30.1. Seller hereby declares that it is informed about Buyer's Anti-Corruption Compliance Policy and Guide and that it is familiar with and understands the provisions of the OECD (Organization for Economic Co-operation and Development) Convention, French anti-corruption laws, the UK Bribery Act, and the U.S. Foreign Corrupt Practices Act. Seller declares that it has not engaged and will not engage in any conduct that violates the provisions of such legislation and shall abide by such legislation while performing the Purchase Order.

    30.2. Seller hereby also declares that it is familiar with and understands the provisions of the anti-bribery and anti-corruption laws of the countries in which it performs work on the Goods and the country of Buyer. Seller declares that it has not engaged and will not engage in any conduct that violates the provisions of the anti-bribery and anti-corruption laws of these countries, and shall abide by such legislation while performing the Purchase Order.

    30.3. For the purpose of this Section 30, "Government Official" means and includes any:

        (i)     elected or appointed government official,
        (ii)    employee, official, contractor, consultant, or representative of a government or a state-owned or controlled enterprises, including all employees of any national oil company,
        (iii)   employee or person acting for or on behalf of a government official,
        (iv)    political party, officer, employee, or person acting for or on behalf of a political party or candidate for public office,
        (v)     person in the service of a government, including members of the military, police, or civil service,
        (vi)    employee or person acting for or on behalf of a public international organization,
        (vii)   employees of Non-Governmental Organizations, or
        (viii)  family members and relatives of any of the above.

    30.4. Neither Seller nor any person acting for or on behalf of Seller shall offer, promise, arrange for, or pay, either directly or indirectly, anything of value to any Government Official for the purpose of obtaining any improper advantage. All payments under the Purchase Order made by Buyer to Seller will be received by Seller for its own account and Seller is not authorized to offer, give, or promise any part of such payments, directly or indirectly, to any Government Official.

    30.5. Seller shall not hire any third party to act for or on its behalf towards Government Officials in relation to the performance of the Purchase Order without Buyer's prior written consent. Such consent shall be conditioned upon Seller having conducted due diligence on such third party in a thorough and proper manner in Buyer's sole opinion. Notwithstanding the foregoing Buyer reserves the right, in its absolute discretion, to oppose the hiring of any third party by the Seller to act for or on its behalf towards Government Officials in relation to the performance of the Purchase Order.

    30.6. Neither Seller nor any person acting for or on behalf of Seller shall offer, promise, arrange for, or pay, either directly or indirectly, anything of value to any employee, officer, or representative of Buyer or its client, for the purpose of obtaining any improper advantage or benefit.

    30.7. Seller declares that neither the corporate entity it represents, nor any of its executives or employees, is under current criminal investigation or has been subject to any civil or criminal enforcement actions, at home or abroad, for improper conduct relating to bribery, corruption, or violation of the laws governing business corporate entities.

CONFIDENTIAL                                                                                    EM-HGC019837

*Execution Version*

30.8. Buyer shall have the right from time to time to audit Seller's books and records, during normal business hours, in order to evaluate Seller's compliance with this provision. In this respect, Seller shall cooperate and provide full and immediate access to Buyer and its designated representatives to Seller's books and records to facilitate such audit.

30.9. Seller's failure to comply with its obligations under this Section 30 will constitute a material breach of the Purchase Order, entitling Buyer to immediately terminate the Purchase Order, cancel future payments due to Seller, and be reimbursed any and all amounts Buyer previously paid to Seller for Goods delivered under this Purchase Order, to the extent that Seller's violation(s) related to such Goods. The exercise of such right will be without prejudice to any other right or remedy available to Buyer under this Purchase Order, in equity or at law, and SELLER SHALL RELEASE, INDEMNIFY, DEFEND, AND HOLD BUYER GROUP HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS THAT BUYER GROUP MAY SUFFER AS A RESULT OF SELLER'S FAILURE TO COMPLY WITH THE ABOVE MENTIONED REQUIREMENTS.

30.10. Seller hereby agrees to flow down the foregoing requirements to its subcontractors.

31. **Trade Compliance.**

31.1. **General Obligations.** Seller recognizes that the sale of the Goods hereunder may be subject to trade control laws, rules, and regulations of the United States and/or governmental authorities of other countries as applicable, and accordingly, Seller agrees to cooperate in complying with the requirements of any such law, including licensing and reporting requirements. Seller shall, for the Goods sold hereunder, ensure full compliance with Applicable Laws, including United States law, with respect to economic sanctions and export and re-export controls and regulations. Seller shall advise if any portion of the Services requires a valid United States export license and, if so, verify that Seller has investigated the licensing requirements. The results of such investigation shall be provided to Buyer. Seller shall assist Buyer as necessary in obtaining required licenses.

31.2. **Commodity Codes.** Seller shall provide commodity coding including the Export Control Classification Number (ECCN) and Harmonized Tariff Schedule (HTS) or Schedule B numbers no later than fourteen (14) Days after its execution of the Purchase Order. Within a reasonable time, Seller shall provide any related additional information reasonably requested by Buyer.

31.3. **Retention.** Seller shall retain and maintain all records relating to the import and export of the Goods where Seller acts as either the importer or exporter of record. Such records shall be available to Buyer in accordance with Section 28, provided however, that the period of retention under this Section 31.3 shall be five (5) years from final payment under the Purchase Order.

31.4. **Additional Information Requested.** If requested, Seller shall complete a manifest or other document outlining details about what will be provided under the Purchase Order, such as details pertaining to quantities, weights, dimensions, descriptions, and other requested details.

31.5. **Destination Control Statement.** When requested by Buyer, Seller shall include on its shipping statement, bill of lading, and/or waybill the following statement: "These commodities, technology, or software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. law is prohibited."

32. **Miscellaneous.**

32.1. **Severability.** The provisions of this Purchase Order are separable and severable. If any provision (or portion thereof) of this Purchase Order is declared invalid or unlawful, the remaining provisions shall not be affected thereby, and this Purchase Order shall be construed as if such invalid or unlawful provision (or portion thereof) had never been contained therein.

32.2. **Non-waiver.** Buyer's failure to insist upon strict performance of any term or condition set forth herein or in the cover of the Purchase Order shall not be deemed a waiver of any rights or remedies that Buyer may have and shall not be deemed a waiver of any subsequent breach of the same or any other term or condition hereof.

32.3. **Remedies.** Except as otherwise set forth herein, the rights and remedies of Buyer set forth herein are not exclusive and are in addition to all rights and remedies available at law or in equity.

32.4. **Further Assurances.** Seller and Buyer agree to provide such information, execute and delivery any such instruments and documents and to take such other actions as may be necessary or reasonably requested by the other Party that are not inconsistent with these Purchase Order Terms and Conditions and that do not involve the assumption of obligations greater than those provided for in these Purchase Order Terms and Conditions, in order to give full effect to these Purchase Order Terms and Conditions and to carry out the intent of the Purchase Order.

32.5. **Notices.** Any notice, demand, offer, or other written instrument required or permitted to be given pursuant to the Purchase Order shall be in writing signed by the Party giving such notice and shall be hand delivered or sent by overnight courier, messenger, facsimile, or certified mail, return receipt requested, to the other Party at the address set forth in the Purchase Order cover. Each Party shall have the right to change the place to which notice shall be sent or delivered by sending a similar notice to the other Party in like manner. Notices, demands, offers, or other written instruments shall be deemed to have been duly given on the date actually received by the intended recipient.

32.6. **Entire Agreement.** The Purchase Order, as defined herein, constitutes the entire understanding and agreement of and between the Parties and supersedes all prior representations and agreements. THE PARTIES AGREE THAT ANY OTHER TERMS AND CONDITIONS, INCLUDING ANY THAT MAY ACCOMPANY THE GOODS, AND INCLUDING ANY INVOICE SUBMITTED BY SELLER TO BUYER, WILL BE OF NO FORCE OR EFFECT. The Purchase Order shall not be varied by oral agreements or representations, or otherwise, except by a Change Order or another instrument in writing of subsequent date and duly executed by authorized representatives of the Parties. Any accrued but unperformed obligations and any representations and warranties shall survive expiration or other termination of this Purchase Order.

CONFIDENTIAL

EM-HGC019838

IN WITNESS WHEREOF, the Parties hereto have caused these Purchase Order Terms and Conditions to become effective as of the latest date set forth below.

PERMICO MIDSTREAM PARTNERS, LLC

By: _____

Print Name: JEFFREY BEICKER

Title: CEO

Date: 5/22/2019

EDGEN MURRAY CORPORATION

By: _____

Print Name: Greg Baker

Title: President

Date: 5/16/2019

CONFIDENTIAL

EM-HGC019839

*Execution Version*

## EXHIBIT B

### PAYMENT SCHEDULE

Seller will invoice Buyer for quantities of Goods upon DDP arrival of such Goods at the designated delivery point set forth in the cover of the Purchase Order. All delivered quantities must be verified and approved by Buyer or Buyer's agent and shall meet all other requirements of Delivery (as defined in Exhibit A).

Upon Delivery, subject to the terms and conditions of Exhibit A, Seller's invoice shall be paid by Buyer Net 30 days. Notwithstanding the foregoing, Seller agrees that it shall not be entitled to receive any payment from Buyer on any date prior to August 10th, 2019, regardless of any invoice submission by Seller on any prior date.

B-1

CONFIDENTIAL

EM-HGC019840

*Execution Version*

## EXHIBIT C

### DELIVERY DATE(S) AND LIQUIDATED DAMAGES

1.      **Delivery Date**.  Seller shall complete Delivery of the Goods to Buyer in accordance with the Purchase Order Terms and Conditions of this Purchase Order no later than the Delivery Date listed on the cover of this Purchase Order (each a "*Delivery Date*").

2.      **Liquidated Damages**.  If Seller fails to Deliver any portion of any Goods later than forty five (45) Days after the applicable Delivery Date, then Seller shall pay to Buyer delay liquidated damages ("*Delay Liquidated Damages*") in the amount of one percent (1%) of the aggregate Price to be paid by Buyer under this Purchase Order per seven-Day week, or portion thereof, the Delivery of such Goods is delayed beyond the Delivery Date.

3.      **Aggregate Limitation on Delay Liquidated Damages**.  Seller's maximum liability to Buyer for Delay Liquidated Damages, in the aggregate, shall be equal to twenty percent (20%) of the aggregate Price to be paid by Buyer under this Purchase Order, provided that this limitation shall not be construed to limit Seller's other obligations or liabilities under the Purchase Order (including its obligations to complete the Delivery of the Goods for the compensation provided under the Purchase Order and with respect to its Warranty obligations).

C-1

CONFIDENTIAL

EM-HGC019841

Exhibit C-1

**AMERICAN STEEL PIPE** THE RIGHT WAY

**EDGEN MURRAY**

# AMERICAN Steel Pipe/Edgen Murray Estimated Project Timeline

Date: 16-May-19

Project Name: Edgen/OSO Big Shock Ranch

| Description | | | | Quantity (ft) | Coil Availability | | Pipe Rolling | Coating | Pipe Shipping from Coater | Final Delivery Date | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dia | Wall | Gr | | | Start: | Complete: | | | | | |
| 24" | 0.375 | X65M | | 1,056,000 | July - August 2019 | | Week of 7/29/19 | Week of 8/12/19 | Week of 8/19/19 | | Estimated travel time: 2-3 weeks manifest; 1 week unit train (depending on delivery location) |
| | | | | | | | Week of 10/14/19 | Week of 10/21/19 | Week of 10/28/19 | December 15, 2019 | |

EM-HGC019842

*Execution Version*

## EXHIBIT D

### FORM OF CHANGE ORDER
(for use when the Parties agree upon and execute a Change Order pursuant to a Purchase Order)

PURCHASE ORDER NO.: [_____]        CHANGE ORDER NUMBER: _____

BUYER: [_____]                                  DATE OF CHANGE ORDER: _____

SELLER: [_____]

DATE OF PURCHASE ORDER: [●]

---

**The Purchase Order between the Parties listed above is changed as follows:** *(attach additional documentation if necessary)*

---

**Adjustment to Seller's Schedule (including changes to Delivery Date or Required Date):**
*(insert N/A if no changes or impact; attach additional documentation if necessary)*

**Adjustment to Price:**
1. The original Price was ........................................................................................................ $_____
2. Net change by previously authorized Change Orders (COs#_____) ........................................ $_____
3. The Price prior to this Change Order was............................................................................. $_____
4. The Price will be (increased) (decreased) (unchanged)
   by this Change Order in the amount of ............................................................................... $_____
5. The new Price including this Change Order will be ............................................................... $_____

**Other Adjustment (provide description of adjustment made by this Change Order):**
*(insert N/A if no changes or impact; attach additional documentation if necessary)*

Upon execution of this Change Order by Seller and Buyer, the above-referenced change shall become a valid and binding part of the Purchase Order, as applicable, without exception or qualification, unless noted in this Change Order. Except as modified by this and any previously issued Change Orders, all other terms and conditions of the Purchase Order shall remain in full force and effect. This Change Order is executed by each of the Parties' duly authorized representatives.

[*Insert name of Buyer*]                        [*Insert name of Seller*]

_____                 _____
By                                                      By

_____                 _____
Name                                                  Name

_____                 _____
Title                                                   Title

D-1

*Execution Version*

## EXHIBIT E

### FORM OF LIEN AND CLAIM WAIVERS

CONFIDENTIAL

EM-HGC019844

*Execution Version*

**EXHIBIT E**

**PART I**

**SELLER'S CONDITIONAL WAIVER AND RELEASE ON PROGRESS PAYMENT**
(To be provided by Seller with its invoice for final payment)

STATE OF TEXAS
COUNTY OF _____.
Project: _____
Job No. _____

    On receipt by the signer of this document, [_____] ("*Seller*"), of a check, wire transfer or other valid form of payment from or on behalf of [_____] ("*Buyer*") in the sum of U.S. $_____ payable to Seller and when the check has been properly endorsed and has been paid by the bank on which it is drawn, or the wire transfer payment is received by Seller, or Seller is in possession of such other valid form of payment, as applicable, this document becomes effective to release any mechanic's lien right, any right arising from a payment bond that complies with a state or federal statute, any common law payment bond right, any claim for payment, and any rights under any similar ordinance, rule, or statute related to claim or payment rights for persons in Seller's position that Seller has on the property of Buyer, located at [_____] County, Texas to the following extent:

    For purposes of provision of labor, services, equipment and material for the Permico Energia NGL Pipeline Project pursuant to that certain Pipeline Purchase Order by and between Seller and Buyer (the "*Project*").

    This release covers the final payment to Seller for all labor, services, equipment, or materials furnished to the property or Buyer.

    Before any recipient of this document relies on this document, the recipient should verify evidence of payment to Seller.

    Seller warrants that Seller has already paid or will use the funds received from this progress payment to promptly pay in full all of Seller's laborers, subcontractors, materialmen, and suppliers for all work, materials, equipment, or services provided for or to the above referenced Project up to the date of this waiver and release.

    Seller agrees that this waiver and release form is in compliance with TEX. PROP. CODE ANN. § 53.284.

**FOR SELLER:**

Applicable to Invoice No(s).: **All**

Date: _____
Signed: _____
By: _____
Title: _____

E-2

CONFIDENTIAL EM-HGC019845

*Execution Version*

## AFFIDAVIT

On this ___ day of _____, 20__, before me appeared the above-signed, known or identified to me personally, who, being first duly sworn, did say that s/he is the authorized representative of Seller and that this document was signed under oath personally and on behalf of Seller.

_____
Notary Public
My term expires (date):_____

E-3

CONFIDENTIAL

EM-HGC019846

*Execution Version*

## EXHIBIT E

### PART 2

**SELLER'S CONDITIONAL CLAIM WAIVER AND RELEASE ON FINAL PAYMENT**
(To be provided by Seller with its invoice for final payment)

STATE OF TEXAS
COUNTY OF _____
Project: _____
Job No. _____

    The undersigned, [_____] (*"Seller"*), has been engaged under contract with [Permico Midstream Partners, LLC] (*"Buyer"*) to furnish certain materials, equipment, services, and labor for the improvements known as the Permico Energia NGL Pipeline Project (*"Project"*), which is located in [_____] County, State of Texas and is more particularly described as follows:

[_____].

    Upon receipt of the sum of U.S. $_____ (amount in invoice for final payment), Seller represents that it has been paid in full for all materials, equipment, services and labor furnished to the Project, and Seller hereby waives and releases any and all claims, demands, actions, causes of action or other rights against Buyer, whether based at law, in contract, tort, equity or otherwise (except those rights which are separately waived pursuant to Tex. Prop. Code Ann. § 53.284 by Seller's Conditional Waiver and Release on Final Payment form, which is executed concurrently with this form), which Seller has, may have had or may have in the future against Buyer or any of its affiliates or subsidiaries arising out of the Agreement or the Project, whether or not known to Seller at the time of the execution of this Waiver and Release.

    Seller further represents that all of its obligations, legal, equitable, or otherwise (other than those that survive the termination or expiration of said contract, including, without limitation, warranty obligations), relating to or arising out to the Project have been fully satisfied, including, but not limited to, payment to subcontractors and payment of taxes for which Seller is responsible under said contract.

    This Conditional Claim Waiver and Release is freely and voluntarily given, and Seller acknowledges and represents that it has fully reviewed the terms and conditions of this Conditional Claim Waiver and Release and that it is fully informed with respect to the legal effect of this Conditional Claim Waiver and Release, and that it has voluntarily chosen to accept the terms and conditions of this Waiver and Release in return for the payment recited above. Seller understands, agrees and acknowledges that, upon payment, this document waives rights and is fully enforceable to extinguish all claims (except those rights which are separately waived pursuant to Tex. Prop. Code Ann. § 53.284 by Seller's Conditional Waiver and Release on Final Payment form, which is executed concurrently with this form) of Seller.

**FOR SELLER:**

Applicable to Invoice No(s). **All**

Date: _____
Signed: _____
By: _____
Title: _____
Title: _____

E-4

*Execution Version*

## EXHIBIT E

## PART 3

### SUBCONTRACTOR'S CONDITIONAL WAIVER AND RELEASE ON PROGRESS PAYMENT
(To be provided by subcontractor with its invoice for final payment)

STATE OF TEXAS
COUNTY OF _____
Project: _____
Job No. _____

On receipt by the signer of this document, [_____] (*"Subcontractor"*), of a check, wire transfer or other valid form of payment from, or on behalf of, [_____] (*"Seller"*) in the sum of U.S. $_____ payable to Subcontractor and when the check has been properly endorsed and has been paid by the bank on which it is drawn, or the wire transfer payment is received by Subcontractor, or Subcontractor is in possession of such other valid form of payment, as applicable, this document becomes effective to release any mechanic's lien right, any right arising from a payment bond that complies with a state or federal statute, any common law payment bond right, any claim for payment, and any rights under any similar ordinance, rule, or statute related to claim or payment rights for persons in Subcontractor's position that Subcontractor has on the property of [Permico Midstream Partners, LLC] (*"Buyer"*), or that certain property located at [_____] County, Texas to the following extent:

For purposes of provision of labor, services, equipment and material for the Permico Energia NGL Pipeline Project pursuant to that certain [Purchase Order] by and between Subcontractor and Seller (the *"Project"*).

This release covers the final payment to Subcontractor for all labor, services, equipment, or materials furnished to the property, to Seller or to Buyer.

Before any recipient of this document relies on this document, the recipient should verify evidence of payment to Subcontractor.

Subcontractor warrants that Subcontractor has already paid or will use the funds received from this final payment to promptly pay in full all of Subcontractor's laborers, subcontractors, materialmen, and suppliers for all work, materials, equipment, or services provided for or to the above referenced Project up to the date of this waiver and release.

Subcontractor agrees that this waiver and release form is in compliance with TEX. PROP. CODE ANN. § 53.284.

### FOR SUBCONTRACTOR:

Applicable to Invoice No(s). **All**

Date: _____
Signed: _____
By: _____
Title: _____

E-5

CONFIDENTIAL
EM-HGC019848

*Execution Version*

## AFFIDAVIT

On this ___ day of _____, 20__, before me appeared the above-signed, known or identified to me personally, who, being first duly sworn, did say that s/he is the authorized representative of Seller and that this document was signed under oath personally and on behalf of Seller.

_____
Notary Public
My term expires (date):_____

E-6

CONFIDENTIAL

EM-HGC019849

*Execution Version*

## EXHIBIT E

### PART 4

### SUBCONTRACTOR'S CONDITIONAL CLAIM WAIVER AND RELEASE ON FINAL PAYMENT
(To be provided by subcontractor with its invoice for final payment)

STATE OF TEXAS
COUNTY OF _____
Project: _____
Job No. _____

    The undersigned, [_____] ("***Subcontractor***"), has been engaged under contract with [_____] ("***Seller***") to furnish certain materials, equipment, services, and labor for the improvements known as the Permico Energia NGL Pipeline Project ("***Project***"), which is located in [_____] County, State of Texas and is more particularly described as follows:

[_____].

    Upon receipt of the sum of U.S. $_____ (amount in invoice for final payment), Subcontractor represents that it has been paid in full for all materials, equipment, services and labor furnished to the Project, and Subcontractor hereby waives and releases any and all claims, demands, actions, causes of action or other rights against Permico Midstream Partners, LLC or Seller, whether based at law, in contract, tort, equity or otherwise (except those rights which are separately waived pursuant to Tex. Prop. Code Ann. § 53.284 by Seller's Conditional Waiver and Release on Final Payment form, which is executed concurrently with this form), which Seller has, may have had or may have in the future against Permico Midstream Partners, LLC or any of its affiliates or subsidiaries arising out of the Project, whether or not known to Seller at the time of the execution of this Waiver and Release.

    Subcontractor further represents that all of its obligations, legal, equitable, or otherwise (other than those that survive the termination or expiration of said contract, including, without limitation, warranty obligations), relating to or arising out to the Project have been fully satisfied, including, but not limited to, payment to subcontractors and payment of taxes for which Subcontractor is responsible under said contract.

    This Conditional Claim Waiver and Release is freely and voluntarily given, and Subcontractor acknowledges and represents that it has fully reviewed the terms and conditions of this Conditional Claim Waiver and Release and that it is fully informed with respect to the legal effect of this Conditional Claim Waiver and Release, and that it has voluntarily chosen to accept the terms and conditions of this Waiver and Release in return for the payment recited above. Subcontractor understands, agrees and acknowledges that, upon payment, this document waives rights and is fully enforceable to extinguish all claims (except those rights which are separately waived pursuant to Tex. Prop. Code Ann. § 53.284 by Seller's Conditional Waiver and Release on Final Payment form, which is executed concurrently with this form) of Subcontractor.

**FOR SUBCONTRACTOR:**

Applicable to Invoice No(s). **All**

Date: _____
Signed: _____
By: _____
Title: _____
Title: _____

E-7